Civilian pay; overtime compensation; necessity for ordered and approved overtime; laches. — On January 23, 1980 the court entered the following order:
Before Friedman, Chief Judge, Cowen, Senior Judge, and Kunzig, Judge.
In this case, which is before the court on cross-motions for summary judgment, plaintiff sues for overtime pay pursuant to 5 U.S.C. 5544(a), for the period from May 18, 1964, to May 31, 1974.
From 1947 to 1964, plaintiff was employed by the Department of the Army at Fort Sam Houston, Texas, and *560 resided in San Antonio, Texas, about 2 miles east of Fort Sam Houston. He worked an 8-hour day, from 7:30 a.m. to 4:00 p.m., with /¡ hour allowed for lunch. In May 1964, he was offered the position of Engineer Maintenance Lead Foreman at Camp Bullis, which is located about 23 miles northwest of Fort Sam Houston and about 25 miles from plaintiffs residence in San Antonio. At first plaintiff refused the offer, because of the long distance and the commuting expense involved. However, a mutually convenient arrangement was agreed upon, whereby plaintiff was allowed the use of a military pickup truck for his transportation from Fort Sam Houston to Camp Bullis and return each day, on the condition that he transport equipment and supplies between the two installations. Under the agreement, plaintiff was permitted to report for work at Fort Sam Houston near his home, rather than to commute to Camp Bullis, which was 25 miles away from his residence. Although his official place of employment was Camp Bullis, he was paid from 7:30 a.m. when he reported to Fort Sam Houston.
Upon arrival at the Fort in the morning, he parked his car in a lot next to a military pickup truck. After completing his morning chores, which consisted of unloading the military pickup truck he had driven to the Fort the previous afternoon and turning in or completing reports, he got into the military pickup truck and completed his route to Camp Bullis. The arrangement required plaintiff to work at Camp Bullis until 4:00 p.m., which was the end of the normal working day for all employees at both installations. Prior to 4:00 p.m., plaintiff loaded the pickup truck with equipment.
The arrangement was advantageous to plaintiff, because he did not have to pay for the long trip from Fort Sam Houston to Camp Bullis. In addition, he did not have to leave home for work as early as he would have been required to had he reported to Camp Bullis. On the other hand, the vehicle he used carried various pieces of equipment and supplies for the Government. If he had not driven the vehicle, it would have been necessary for the Army to employ some other person to drive it during the day in order to transport the equipment and supplies from one installation to the other. The arrangement was discontinued after May 31, 1974.
*561 Plaintiff left Camp Bullis about 4:00 p.m. each working day and arrived at Fort Sam Houston about one hour later. Plaintiff was not paid for the return trip in the afternoon, and he was not officially ordered to perform any overtime work at Fort Sam Houston after he arrived in the evening, or until 7:30 in the morning of the next day. However, he claims that after he returned to Fort Sam Houston, he performed overtime work regularly, consisting of administrative paper work on work orders, gas tickets, equipment reports, electrical reports, and related items.
Plaintiff first filed his claim for the alleged overtime pay due him on June 12, 1974. It was filed with the Finance and Accounting Office at Fort Sam Houston, and forwarded by that office to the Transportation and Claims Division of the General Accounting Office. It was denied by the General Accounting Office on the ground that no one vested with authority to do so had authorized or approved the overtime claimed by plaintiff. The denial was upheld on appeal by the Deputy Comptroller General’s decision of April 20, 1976.
The issues presented for decision are:
1. Whether the plaintiffs claim is invalid because the payment of overtime compensation in his case was not officially ordered or approved in writing, and
2. Whether his action is barred by the equitable doctrine of laches.
FSH Regulation 690-1-9, which was in effect and applicable at Fort Sam Houston during the period in controversy provided in pertinent part as follows:
b. Compensation for Overtime. Overtime, compensatory or paid, must be approved in writing by competent authority prior to work being performed except under emergency conditions as described in (1) above. When prior written approval cannot be obtained because of emergencies, such approval will be obtained within 72 hours or before end of pay period, whichever is earlier. Compensation for overtime services will be controlled as follows:
(1) Employees are not entitled to compensation, either in cash or time off, for overtime work performed on their own initiative.
(2) Compensation, either in cash or time off, will be paid only for overtime work which is duly ordered and approved.
*562 It is undisputed that none of the claimed overtime was ordered or approved in writing and that no authorized official ordered or approved such overtime work by plaintiff. On the contrary, the evidence shows that while he was never ordered to any overtime work at Fort Sam Houston in the evening, plaintiff was authorized and directed to do overtime work on a day-to-day basis, usually in emergencies, which was paid for. He should have known, therefore, that he could not recover overtime pay unless it was ordered and approved by an authorized official.
The case is unlike Anderson v. United States, 136 Ct. Cl. 365 (1956), because in that case, the overtime services were performed with the knowledge and approval of the head of the agency, but he and his subordinates meticulously failed to order or approve any of the overtime work in writing. Therefore, plaintiffs claim must be rejected for lack of compliance with the regulations. See Bantom v. United States, 165 Ct. Cl. 312, 318 (1964).
The record indicates that the plaintiff was a very conscientious person, who felt that he had to perform overtime work during the evenings at Fort Sam Houston, even though he was told by his supervisor at Fort Sam Houston that overtime pay for this work would not be authorized. Unfortunately for plaintiff, his voluntary services will not support a claim for overtime compensation. Baca v. United States, 150 Ct. Cl. 70, 86, cert. denied, 364 U.S. 892 (1960), Goode v. United States, 25 Ct. Cl. 261, 267 (1890).
In several cases involving claims for overtime pay, we have held that the equitable doctrine of laches does not apply, because of the Government’s failure to show that it has been prejudiced as a result of plaintiffs delay in asserting his claim. See Detling v. United States, 193 Ct. Cl. 125, 131, 432 F. 2d 462, 465 (1970). However, in this case, we conclude that a sufficient showing of prejudice has been made to preclude plaintiffs recovery. Here there was an extraordinarily long delay. Plaintiffs suit was not filed until December 22, 1977, but what is more important, he did not file his claim for overtime pay with the Finance and Accounting Office at Fort Sam Houston until 10 years after the claim first accrued. As we stated in Gersten v. United States, 176 Ct. Cl. 633, 636, 364 F. 2d 850, 852 (1966):
*563 * * * the longer the delay the less need is there to show, or search for, specific prejudice, and the greater the shift to the plaintiff of the task of demonstrating lack of prejudice. * * *
Here prejudice to the Government resulted, because if plaintiff had filed his claim for overtime in a timely manner, the Government would have had an opportunity to cancel the arrangement previously entered into and make other arrangements for transportation of materials between Camp Bullis and Fort Sam Houston, without the necessity of paying overtime. Moreover, there has been a showing that the long delay has otherwise prejudiced defendant in its defense of this case. An affidavit attached to defendant’s motion for summary judgment shows that all of the records covering plaintiffs working time have been destroyed in accordance with an Army regulation.
Although duress has not been pleaded by plaintiff nor specifically argued in his motion and brief, there is a statement in his brief that the delay in filing his claim was due to his concern for continued employment in order to provide for his large family, coupled with a fear that he would be discharged if he made such a claim. There is no suggestion that plaintiff was threatened with discharge or that he was induced to delay the filing of his claim by overt or coercive acts of his supervisors. It follows that he has not made a sufficient showing of duress. Leone v. United States, 204 Ct. Cl. 334 (1974).
it is therefore ordered, that defendant’s motion for summary judgment is granted, plaintiffs cross-motion for summary judgment is denied, and the petition is dismissed.