Davis, Judge,
delivered the opinion of the court:
William F. Oberkoetter, the plaintiff’s decedent,[1] was separated in 1954, as a result of a reduction in force, from his civilian position as an auditor with the Chicago Ordnance District. The claim is that this separation was improper because, first, it stemmed directly from a previous illegal demotion and reassignment, and, second, the employee was not given the true reason for the reduction in force. The various steps taken by the agency and the Civil Service Commission with respect to the demotion, reassignment, and separation are set forth in the findings. We do not narrate or appraise them since we hold that, in any event, this suit was begun too late and the claim for back pay, even if otherwise valid, is defeated by laches.
Mr. Oberkoetter received his notice of the reduction in force on August 31,1954, and the separation became effective on September 30, 1954. On September 9, 1954 he appealed to the Civil Service Commission. The Kegional Director of the Commission’s Seventh Begion rejected the appeal, in effect, on October 21, 1954. The employee took no further appeal within the Commission.[2] The petition was filed in this court on March 25,1960. From October 1954 to March *635 I960, some five years and five months elapsed. The unchallenged findings also show that, from the time of his separation by reduction in force, Oberkoetter believed that his rights as a classified civil service employee were violated by the Chicago Ordnance District, and that no later than August 1957 he became aware of this court as the forum for back-pay claims.
The defense of laches, if properly made out, is entrenched in the jurisprudence of demands for back pay or for restoration because of an illegal separation from the civilian federal service. See, e.g., Chappelle v. United States, 168 Ct. Cl. 362, 366 (1964) ; Alpert v. United States, 161 Ct. Cl. 810, 820-21 (1963) ; Bovard v. United States, 160 Ct. Cl. 619, 620-22 (1963), cert. denied, 374 U.S. 830. The delay of sixty-five months in filing suit in this case is clearly enough, unless thoroughly justified,[3] to bring down the bar. In Alpert, supra, the defense was sustained when the elapsed time was somewhat over five years, and the opinion recalls a number of cases from this and other courts holding laches applicable to periods ranging from eleven months to four and a half years. In Bovard, supra, the full delay from the exhaustion of the Civil Service Commission remedy to the filing in this court was about four and a half years, and that employee had meanwhile brought an unsuccessful restoration suit in the district court.
Plaintiff’s explanation of the delay is that, during the five years and five months, her decedent was either employed in other federal positions (November 1954-October 1955; October 1956-April 1957); engaged in seeking reinstatement through communications to the Senate Post Office and Civil Service Committee (June 1955; August 1957), this court (August 1957), the General Accounting Office (August 1957), the Civil Service Commission (August 1957), or the Chicago Ordnance District (October or November 1957); or was attempting to obtain an attorney to begin a proper action (August 1957-February 1960). See findings 21-25. *636 These activities, separately and cumulatively, are insufficient justification for a delay of almost six years.
The seeking of administrative relief which is not a prerequisite to the filing of a proper suit has often been held an inadequate excuse. See Alpert v. United States, supra, 161 Ct. Cl. at 823-24, and cases cited.[4] It can be argued that this rule should not apply where the appeal is to the employing agency which can offer reinstatement as a matter of grace,[5] but in this case Mr. Oberkoetter’s post-discharge dealings with his employer (the Chicago Ordnance District), in late 1957 and early 1958, would subtract only a few months from the total period. The long search for a lawyer to bring suit must also be rejected as a proper warrant for delay; there were no special circumstances vindicating that portion of the elapsed time. See Drown v. Higley, 244 F. 2d 774, 775 (C.A.D.C. 1957) ; O'Connor v. Summerfield, 239 F. 2d 69 (C.A.D.C. 1956) ; Benson v. Zahner, 289 F. 2d 756 (C.A.D.C. 1960), cert. denied, 366 U.S. 904 (1961). Likewise, the year and a half plaintiff’s decedent worked for the Federal Government in other jobs at the grade level he claims here (Nov. 1954-Oct. 1955; Oct. 1956-April 1957) should not be excluded from the delay-period (see Alpert v. United States, supra, 161 Ct. Cl. at 824), especially since the present claim covers almost a year’s unemployment (Nov. 1955-Oct. 1956) which divided his two stints of post-discharge federal employment and antedated the filing of the suit by about three and one-half years.
In any event — plaintiff argues — prejudice is the only ground for invoking laches, and the Government was not, and could not have been, prejudiced by the belated institution of this action. We think that the longer the delay the less need is there to show, or search for, specific prejudice, and the greater the shift to the plaintiff of the task of demonstrating lack of prejudice. Cf. Benson v. Zahner, supra, 289 F. 2d at 757 ; Bovard v. United States, supra ; Miner v. United States, 143 Ct. Cl. 801, 803 (1958). Here the passage of *637 time was sixty-five months, almost overtaking the final bar of limitations (28 U.S.C. § 2501). To the extent that some particular reason to infer prejudice be needed, it is adequately revealed by the record. If plaintiff were to prevail, the Government would be liable for the pay of Mr. Oberkoet-ter’s abolished position for a period of some 8y% years[6] during which it received no services from him and would not have wanted any services.[7] Moreover, there are indications that the Government’s defense may have been hindered by the length of the delay and the destruction of official records in ordinary course. See finding 9, footnote 5; finding 13, footnote 8; and finding 18, footnote 10.
The plaintiff’s claim is barred by laches, and she is not entitled to recover. The petition is dismissed.
FINBINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Lloyd Fletcher, and the briefs and arguments of counsel, makes findings of fact as follows:
1. Plaintiff* was a citizen of the United States residing in Chicago, Illinois. He was a classified Civil Service employee, and at the time of his demotion on March 28,1954 (hereinafter described), he was employed by the Department of the Army, Chicago Ordnance District (CIIOD). He brought this action for the salary of a GS-11 classified Civil Service employee from March 28, 1954 (less amounts earned in other employment), alleging that his reduction in grade on that date from GS-11 to GS-9 was arbitrary, capricious, and improper and that such wrongful reduction in grade caused his subsequent dismissal pursuant to a reduction in force (RIF) on September 30, 1954.
2. Plaintiff was not a Preference Eligible as defined by the Veterans’ Preference Act of 1944 (58 Stat. 390) and, accord *638 ingly, was not entitled to the protections of that Act. His service computation date is February 7,1942, and at the time of his dismissal under the K.IF on September 80,1954, he was in Detention Group IIB. At all pertinent times plaintiff had an efficiency or performance rating of “satisfactory.”
3. Plaintiff first entered the Government service on October 6,1933, as an Assistant Examiner in the Federal Deposit Insurance Corporation, Chicago, Illinois. He resigned from the Government service in 1935, but returned on July 20, 1942 as an Accountant, CAF-9 with the Department of the Navy in Chicago. In 1943 he transferred to the General Accounting Office and following a reduction in force in 1947 was employed in 1948 by the Home Loan Bank Board as an Examiner, CAF-7. On August 7,1949, while serving in the position of Examiner, CAF-7, plaintiff’s appointment was converted to classified (competitive) status. On August 17, 1951, he resigned from the Home Loan Bank Board. On October 8, 1951, plaintiff was given an indefinite appointment in lieu of reinstatement as a Cost Accountant, GS-510-11, in the Office of Price Stabilization. On August 17,1952, he was separated from the Office of Price Stabilization to accept an indefinite appointment with the Chicago Ordnance District, Department of the Army (CHOD).
On August 18,1952, plaintiff received an indefinite appointment as a Price Analyst, GS-1102-11 (Job #638) in the Contract Pricing Branch of the Comptroller’s Division (sometimes referred to as “Comptroller’s Office”) of CHOD. Not long thereafter the name of the Contract Pricing Branch was changed to “Price Analysis Branch”, but there were no changes then made in the functions of the Branch. From 1952 to 1962, the chief of the Price Analysis Branch was Elmer A. Dechmann.
4. When plaintiff was first assigned to the Contract Pricing Branch (later the Price Analysis Branch) it was not divided into formal sections. Its various functions were merely assigned to several informal groups of employees all of whom were originally located in office space at 209 Jackson Boulevard, Chicago, Illinois. One of these informal groups, which later became known as the Facilities and Progress Payment Section, performed work involving price analysis of facilities *639 contracts, auditing of progress payment requests, and review of overhead rate studies. From its inception, the unofficial head of this group was Mr. Paul F. Hamilton. Shortly after he came to work for CHOD in late September 1952, Hamilton’s group was physically moved from 209 Jackson Boulevard to a nearby building at 323 Franklin Street on a floor housing the Budget and Fiscal Branch of the Comptroller’s Office. The remaining employee-groups in the Price Analysis Branch remained at 209 Jackson Boulevard. The Hamilton group was moved to 323 South Franklin Street primarily because many of the records the group would have to review in their work were physically located there.
5. In January 1953, plaintiff commenced working in the Budget and Fiscal Branch of the Comptroller’s Division. This was done at the direction of plaintiff’s supervisor, Mr. Dechmann, who was chief of the Price Analysis Branch. According to Mr. Dechmann, he sent plaintiff to the Budget and Fiscal Branch on a temporary basis because that branch was then in need of assistance. During the early months of 1953, the record as to plaintiff’s employment status in CHOD is considerably confused. It has been stipulated that in January 1953, as stated above, plaintiff commenced working in the Budget and Fiscal Branch. Both plaintiff and his chief, Mr. Dechmann, considered this assignment out of the Price Analysis Branch to be a temporary one. They believed that plaintiff remained under Dechmaim’s technical supervision rather than that of the chief of the Budget and Fiscal Branch. Then, on March 10,1953, the Assistant Comptroller of CHOD “reassigned” plaintiff to the Facilities & Progress Payment Section of the Price Analysis Branch. The office memorandum whereby this was accomplished read, in pertinent part, as follows:
To: ALL PRICE ANALYSIS BRANCH PERSONNEL
From: Boy E. Duvall
Asst. Comptroller
Subject: Organization of Price Analysis Branch Effective 10 March 1953, the following reassignments of personnel are made:
* * Í: * *
4. Other personnel are reassigned in accordance with the revised Table of Organization attached.
*640 The attached Table of Organization provided in pertinent part as follows:
TABEE OE ORGANIZATION
PRICE ANALYSIS BRANCH
ELMER A. BECKMANN, CHIEE
Esther L. Olson, Sec.
JAMES A. DONAHUE, ADMIN. ASST.
AMMUNITION PRICE
ANALYSIS SECTION
TANK AUTOMOTIVE PRICE
ANALYSIS SECTION
* * * *
(Names omitted)
OPEE CONTRACT ANALYSIS SECTION
(Names omitted)
EACILITIES & PROGRESS PAYMENT SECTION
$ $ $ $
(Names omitted)
Hamilton, Pañi F., Chief
Eckert, Frank R.
Hooper, James
Oberkoetter, Wm. Frank
Welsch, Elmer J.
[Emphasis supplied]
,6. Then, in September 1953, the Facilities and Progress Payment Section, to which plaintiff had been “reassigned” on March 10,1953, was transferred from the Price Analysis Branch of the Comptroller’s Office to the Budget and Fiscal Branch of that office. At that time the name of the section was also changed to the Industrial Cost Accounting Section of the Budget and Fiscal Branch. The chief of Budget and Fiscal was Mr. F. Wiemann, and after the transfer the section operated under his official supervision. On technical matters, however, plaintiff and his fellow employees continued to consult with Mr. Dechmann.
Meanwhile, according to his Service Record Card, plaintiff had been transferred to the Budget and Fiscal Branch on August 18, 1953, which was approximately one month prior to the above described transfer of his section.[1] He received *641 no formal notice of this action. However, from the record in this case, it does not appear that the regulations then in effect required that any personnel forms be issued with respect to such transfer or reassignment action within a division other than Standard Form 52 which was used to notify the personnel office of the change. This is in contrast to such personnel actions as change in job title or series, rate of pay, or reassignment to another division. Such personnel actions require formal notification to the affected employee on Standard Form 50. For example, Paul F. Hamilton and James Hooper, two of plaintiff’s fellow-employees who had been assigned with him to the Facilities and Progress Payment Section on March 10,1953, also were assigned to the Budget and Fiscal Branch when the section was transferred. This action is reflected by an entry on Mr. Hamilton’s Service Becord Card entitled “Reassignment” and an entry on Mr. Hooper’s Service Record Card entitled “Change Duty Post 8-18-53.” However, on September 27, 1953, the date Mr. Hamilton was officially assigned to the Budget and Fiscal Branch, he also received the following change in job title, number, and series:

From

Price Analyst Job #638.
GS-1102-11, $6140.00 p/a.
Comptroller Price Analysis Branch.
8. Position Title
9. Service Series, Grade, Salary.
10. Organizational Designations.

To

Supervisory Industrial Cost Accountant Job #1137.
GS-510-11, $6140.00 p/a.
Comptroller Budget and Fiscal Branch.
Since there was a change in his job series from 1102 to 510, Mr. Hamilton was required to, and did receive an SF 50 (Notification of Personnel Action) reflecting that change together with his organizational change from the Price Analysis Branch to the Budget and Fiscal Branch. Mr. Hooper, who, like plaintiff, only had a change in Branch assignments, received no personnel notice reflecting his assignment to the Budget and Fiscal Branch.
Frank R. Eckert and Elmer J. Welsch, the other two employees assigned to the Facilities and Progress Payment Section by the Assistant Comptroller’s memorandum of March 10,1953, resigned effective October 16,1953, and October 2, 1953, respectively, and, unlike the other employees in *642 the section, their Service Record Cards do not indicate that they were ever transferred from the Price Analysis Branch to the Budget and Fiscal Branch of the Comptroller’s Division.
7. With respect to the employees, other than plaintiff, who were assigned to the Facilities and Progress Payment Section, the record shows issuance of personnel actions as follows:

Paul F. Hamilton, designated as Section Cfhiej:

9/27/52 — Entered on duty at CHOD as Price Analyst (#636) GS-10 in Contract Pricing Branch.
3/15/53 — Promoted to GS-11, Price Analyst (#638)[2] in Price Analysis Branch.
9/27/53 — Reassignment (Indefinite) from GS-11 Price Analyst (#638) in Price Analysis Branch to GS-11 Supervisory Industrial Cost Accountant (#1137) in Budget and Fiscal Branch.
3/28/54 — Change in title from Supervisory Industrial Cost Accountant (#1137) to Supervisory Auditor (Industrial Costs) (#1137).
4/10/55 — Change of duty post from Industrial Cost Accounting Section, Budget and Fiscal Branch to Industrial Cost Accounting Section, Price Analysis Branch.
11/ 6/55 — Reassignment from Supervisory Auditor (Industrial Costs) (#1137-S) to Auditor (Industrial Costs) (#1290).

James Hoofer:

10/13/52 — Indefinite Appointment as Price Analyst (#638), GS-11 in Price Analysis Branch.[3]
8/18/53 — Change of duty post Price Analyst GS-11 from Price Analysis Branch to Budget and Fiscal Branch effected by Service Record entry only.
3/24/54 — Change in title and change in duty post from Price Analyst (#638) GS-11 in Budget and Fiscal Branch to Contract Specialist (Price Analyst) (#1290) GS-11 in Price Analysis Branch.
5/ 9/54 — Reassignment from Contract Specialist (#1290) to Auditor (Industrial Costs) (#1290) still in Price Analysis Branch.
*643 1/23/55 — Conversion to Career Conditional Appointment in Price Analysis Branch.

Allen A. Bach:

12/ 8/52 — Appointment as Price Analyst GS-9 in Price Analysis Branch.
1/17/54 — Reassignment (indefinite) and change of duty post from Price Analyst (#637) GS-9 in Price Analysis Branch to Industrial Cost Accountant (#1136) GS-9 in Budget and Fiscal Branch.
3/28/54 — Change in Title from Industrial Cost Accountant (#1136) to Auditor (Industrial Costs) (#1136) in Budget and Fiscal Branch.
4/10/55 — Change in duty post from Budget and Fiscal to Price Analysis Branch as Auditor (Industrial Costs) GS-9.

Frank R. Eckert:

4/14/52 — Entered on duty as Price Analyst GS-9 in Contract Pricing Branch (changed to Price Analysis Branch).
8/ 2/53 — Promotion to Price Analyst, GS-10, in Price Analysis Branch.
10/16/53 — Resignation from Price Analyst, GS-10, Price Analysis Branch.

Elmer J. Welsch:

3/24/52 — Entered on duty as Price Analyst GS-9 in Contract Pricing Branch (changed to Price Analysis Branch).
5/24/53 — Promotion to GS-10, Price Analyst, Price Analysis Branch.
10/ 2/53 — Resignation from GS-10 Price Analyst, Price Analysis Branch.
All of those named above worked in the Facilities and Progress Payment Section under Hamilton and, with the exceptions of Eckert and Welsch, were transferred to the Budget and Fiscal Branch. Hamilton, Hooper, Bach, and plaintiff worked together in the same section, both before and after the section transfer, and all four had the same general work assignment except that the chief, Hamilton, also had supervisory and administrative duties. In fact, all employees, including plaintiff, assigned to the Facilities and Progress Payment Section both when it was a part of the Price Analysis Branch and when it was the Industrial Cost Accounting Section of the Budget and Fiscal Branch *644 continued to do essentially the same type of work with only minor variations.
8. The Civilian Personnel Office at CHOP performed yearly audits or position surveys in accordance with the Classification Act of 1949. This involved a review of what the employees in the various organizational entities of OHOD were actually doing as contrasted with their job description. The purpose of the audit was to insure that the Government was getting the work for which it paid, to assure the employees that they were being properly classified, and to make sure that an employee was not being assigned to work beyond his supervisor’s authority. The audit was intended to identify people who might be improperly classified so that corrective action could be taken in the form of promotions, demotions, or changes in job titles or series.[4] If several individuals were performing the same job, only a sampling of those individuals had to be interviewed in connection with the audit of that particular job.
Sometime during the spring or early summer of 1953, the Personnel Office of CPIOD performed its annual audit of the Comptroller’s Division. In the course of that audit an employee from the Personnel Office talked with several, but not all, of the employees in the Facilities and Progress Payment Section. Since all the members of the section except the chief, Mr. Hamilton, performed virtually the same type of work, it was not necessary that everyone in the section be interviewed.
9. As a part of the audit or position survey described in the preceding finding, plaintiff’s position was audited.[5] The audit was conducted on the basis of the work he was performing in the Budget and Fiscal Branch of the Comptroller’s Office. On March 28, 1954, his position was downgraded from Price Analyst GS-1102-11 to Industrial Cost Ac *645 countant GS-510-9, which title was later corrected to Auditor (Industrial Costs) GS-510-9. Although all of plaintiff’s fellow-employees in the section received changes in such things as position titles and job series, plaintiff was the only employee in the section who was downgraded. By contrast, on the same date of March 28,1954, one of plaintiff’s fellow-employees, James Hooper, who held the same title and grade as plaintiff, received a Notification of Personnel Action. This notification changed Hooper’s position title to Contract Specialist (Price Analyst) Job #1290 and purported to transfer him from Budget and Fiscal Branch back to the Price Analysis Branch,[6] but there were no changes in his duties or work assignments. Unlike plaintiff, Hooper’s salary and grade were not downgraded but remained unchanged. However, it is not disputed that (with the exception of Mr. Hamilton) all employees in the section, including plaintiff and Hooper, performed substantially the same work. There is nothing in the record which satisfactorily explains the reason for this difference in treatment of the two employees.
10. Prior to the official action downgrading his position, plaintiff was advised by form letter dated February 18, 1954, that it was proposed to make such change in his position effective March 28,1954. The letter stated, in pertinent part:
The duties and responsibilities of the position which you presently occupy have been carefully analyzed and evaluated. As a result, your position has been changed to Auditor (Industrial Costs), GS-510-9. This evaluation has 'been made in accordance with the Classification Act of 1949 and official standards pursuant thereto.
This is to advise you that it is proposed to effect your change to lower grade the payroll period beginning 3-28-54. You are to continue in your present position and grade until that date.
This change to lower grade is required by law for the maintenance of a uniform pay structure. Your new salary rate will be $5810.00 per annum, fixed in accordance with current Civilian Personnel Eegulations and with the District’s policy of retaining as much of an employee’s present pay rate as possible.
*646 You have the right to answer this notice of proposed adverse action personally, and in writing, and to submit any evidence you may desire within ten calendar days from the date of receipt of this notice. The civilian personnel office will make such pertinent regulations and records available as you may require for preparation of your reply and your Division Chief has been notified of this letter and has been given 30 days in which to reassign you, if possible, to a position of present grade and salary.
Careful consideration will be given to your reply and you will be furnished a written notice of final decision.
Upon receipt of the foregoing letter, plaintiff immediately conferred with the Civilian Personnel Officer of CHOD, Mr. Walter Kohn. At Mr. Kohn’s suggestion, plaintiff prepared and filed a letter of appeal on February 28,1954, reading, in pertinent part, as follows:
Deference is made to your letter 18 February 1954 * * * and our interview of 23 February 1954 concerning the evaluation downward of the position which I presently occupy but which I did not seek.
Even though our interview of the 23d was considered in the light of an appeal, I am taking this opportunity of submitting this written protest.
I acquired status as a GS 11 two and one half years ago and will be ready for my second within grade raise in August of this year.
On 18 August 1952, I transferred from the Office of Price Stabilization where I was classified as GS 11 to the District, as a Price Analyst, job classification No. 638. I had been doing work of generally the same nature prior to transfer from OPS.
In January of 1953, I was asked if I would go over to the Budget and Fiscal Branch and help out on a temporary basis for a few weeks. Thru a spirit of cooperation, even though working conditions were none of the best, I consented to do so assuming the duties and responsibilities together with my present grade would re-maine [sic] unchanged. It was on these conditions that I remained.
A number of others were approached by the District with the same proposition but as working conditions *647 were none too good, as I have 'already mentioned, refused to cooperate.
The duties and responsibilities of my presently occupied position, not only are embrassed [sicj by those covered by Job Description No. 638 Titled “Price Analyst” GS11 but are considerably increased by additional responsibilities and further duties.
The present increase in duties and responsibilities should be the basis for an upward evaluation rather than downward if classified properly.
Predicated on the fact that I have successfully retained my present grade as an eleven over a substantial period of time and the fact that only thru a spirit of cooperation did I accept the transfer which was understood to be on a temporary basis, I respectfully request that I be restored to my former grade.
By letter dated March 2, 1954, Mr. Kohn replied to plaintiff’s letter, as follows:
Your letter of 28 February 1954 in reply to the notice of proposed adverse action dated 18 February 1954 is acknowledged.
This office is not unmindful of your fine work performance while employed with the Chicago Ordnance District, and it is not our wish that employees with work records such as yours be downgraded. However, it is a requirement of Civil Service Regulations that all positions be audited at regular intervals so that grades of jobs can be properly aligned with the standards for same. Unfortunately, comparison of your duties with the standards indicated that the position which you now occupy must be evaluated as a GS-9.
Position standards for the allocation of your present position are current issuances and this office considers that they were fairly and objectively applied by the Salary and Wage Branch in reaching a determination of your allocated grade.
We wish to advise you that it is your supervisor’s responsibility and prerogative to make assignments or details which will best utilize your qualifications and most efficiently accomplish the mission of the Chicago Ordnance District.
We wish to repeat that the action taken in no way reflects upon your work performance.
You have the right to request review of this decision in accordance with the provisions of CPC, 9 June 1948 *648 and CPL 4-53. Your appeal under these provisions must be started within 90 days of the effective date of this action. In the event that you should appeal through the Army procedure and be dissatisfied with the result, it is your further right to make a final appeal to the Civil Service Commission. If you do not elect to appeal through the Department’s channels, it is permissible for you to appeal directly to the Civil Service Commission; however, in the event you elect to choose this course of action, you will be precluded from subsequently appealing through the Army’s appeal channels. The Civilian Personnel Office will make such pertinent regulations and records available as you may require and will assist you in preparation of an appeal should you elect to exercise this right.
11. By letter of March 28, 1954, plaintiff appealed the classification of his position to the Seventh Civil Service Commission Regional Office. In the preparation of this letter of appeal, plaintiff consulted and received the assistance of Mr. Arthur D. James, an employee in the Personnel Office at CHOD. Mr. James actually prepared in his handwriting a draft of a suggested letter for plaintiff’s guidance.[7] Using this draft as his guide, plaintiff thereupon prepared and filed his aforesaid letter of March 28, 1954. In its final form it read, in pertinent part, as follows:
I wish to. appeal the classification of my position as provided in Chapter P2-18 of the Federal Personnel Manual.
In this connection, I wish to present the following facts:
1) On 18 February 1954,1 was issued an advance notice proposing my change to the position of Auditor (Industrial Costs) GS-510-9 from my position of Price Analyst GS-1102-11 the duties of which I have performed since 18 August 1952. These positions are within the same orginazition [sic]. This proposed action is the *649 result of position classification survey and is to become effective 28 March 1954.
2) I am employed by the Department of the Army, Ohicago Ordnance District 209 West Jackson Boulevard Chicago, Illinois.
3) My position is located in the Budget and Fiscal Branch of the Conptroller's [sic] Office, Chicago Ordnance District.
4) My new grade and salary will be Auditor (Industrial Costs) GS-510-9 at $5810.00 per annum.
5) I request that the grade of position of Auditor (Industrial Costs) GS-510-9 be reallocated to grade GS 11.
6) While my present duties and responsibilities presently confirm [sic] to a degree, to those prescribed in Job Description No. 1136, I have in addition been required to perform those duties covered by Job Description No. 638.
7) I believe the position is erronnously [sic] classified because my duties are not adequately or completely described in my newly assigned Job Description.
12. By form letter to plaintiff dated April 28, 1954, the Seventh Civil Service Region sustained the CHOD classification of plaintiff’s position. The letter read as follows:
Reference is made to your request that this office review the classification of your position at Chicago .Ordnance District, Chicago, Illinois under the provisions of Section 501(b) of the Classification Act of 1949. We have completed this review and our decision is that the correct classification of your position is Auditor (Industrial Costs) GS-510-9.
A copy of an evaluatory report which sets forth the basis for our decision has been sent to your Personnel Office, Chicago Ordnance District. You may review this report by applying to that office, if you wish.
Plaintiff thereupon went to the CHOD Personnel Office and reviewed the evaluatory report which stated, in pertinent part:
On March 28, 1954, Mr. Oberkoetter appealed to this office the action of the Chicago Ordnance District in reclassifying his position from Price Analyst GS-1102-11 to Auditor (Industrial Costs) GS-510-9.
Desk-audit of this position was conducted on April 14 and 15, 1954. The position was discussed before *650 the desk-audit with Mr. F. A. Wiemann, the head of the Budget and Fiscal Branch; and following the audit further discussions were held with the Comptroller, Mr. L. J. Andereck. The incumbent’s immediate supervisor, Mr. Paul F. Hamilton was present throughout the desk-audit.
The position description of record appears to cover the incumbent’s major assignments adequately and is quoted as a statement of his duties and responsibilities.
* * * * *
13. Plaintiff took no further appeal within the Civil Service Commission from the adverse action by the Seventh Begional Office on April 28, 1954.[8] Plowever, the Civil Service Commission regulations pertaining to position classification appeals in effect during this period of time provided that an adverse action by a regional office could be appealed within 14 days to the Commission’s Board of Appeals and Review in Washington, D.C.
14. On August 6, 1954, Mr. Wiemann, the chief of the Budget and Fiscal Branch, submitted a Standard Form 52 which requested the abolishment of plaintiff’s job effective September 30, 1954, pursuant to a “Reduction in force in accordance with new personnel ceiling authorized by Comptroller.”
Thereafter, on August 31, 1954, plaintiff received a reduction in force notice addressed to him in the Budget and Fiscal Branch and reading, in pertinent part, as follows:
Due to the reduced workload in the Comptroller Division it is necessary to reduce the number of employees in your competitive level and competitive area.
The reduced operations in your area of competition will require that your position be abolished effective c.o.b. 30 September 1954. However, in your retention sub-group IXB you have possible reassignment rights to a reasonable offer of continued employment in any available position within the installation for which you are *651 qualified. You will be contacted by tlie civilian Personnel Office as soon as possible relative to your possible reassignment offer.
* * * * *
You are advised that if you decline the reasonable offer of reassignment, you will lose your eligibility for entry on the Reemployment Priority List, your eligibility to partake in the Army Area Placement Program for Separated Career Employees and also the Separated Career Employee Program established by the Civil Service Commission. You will then be separated from the rolls of this agency c.o.b. 30 September 1954.
* * * * *
This reduction in force is being made in conformance with Civil Service Rules and Regulations. You may call in person at the Civilian Personnel Office to obtain additional information concerning the reduction and to examine reduction in force regulations and records. If, after examination of the records, you feel that your rights have been violated, you may appeal in writing to the Regional Director, 7th U.S. Civil Service Regional Office, New Post Office Bldg., Chicago, Illinois, or you may appeal in writing to the District Chief, Chicago Ordnance District, under the Department of the Army Grievance Procedure as outlined in CPR-E2. You may appeal under either provision, however, the Department of the Army will not consider a grievance hearing if an appeal is made to the Civil Service Commission. Appeals must be filed within ten (10) days after receipt of this notice.
15. By letter dated August 31, 1954, from the Personnel Officer of CIIOD plaintiff was offered a GS-7 position of Voucher Examiner Supervisor in the Budget and Fiscal Branch. Plaintiff declined to accept the proffered position and by letter dated September 9, 1954, appealed to the Seventh Regional Office of the Civil Service Commission contending that:
* * * * *
I do not consider this to be a reasonable offer of reassignment and wish to protest the action and register an appeal predicated on the following facts and circumstances.
I hereby respectfully request that my case be reviewed and that I be offered a position or reassignment com- *652 mensúrate with my proven ability and experience, i.e. that of grade GS-11 third step.
By letter dated September 15,1954, the Begional Director of the Seventh Begion advised the Commanding Officer of CHODthat:
Mr. William F. Oberkoetter has appealed to this office from your action in abolishing his position of Auditor
(Industrial Costs) GS-9, and offering him reassignment in lieu of separation, the position of Voucher Examiner Supervisor, GS-7. He states he is in retention subgroup IIB.
Mr. Oberkoetter does not consider this a reasonable offer of reassignment, in view of the fact that when he transferred to your organization on August 18,1952 from the Office of Price Stabilization, he was classified as a Price Analyst, GS-11. He alleges that in January, 1953, he was asked if he would go over to the Budget and Fiscal Branch from the Price Analyst Branch, to help out on a temporary basis for a few weeks only. He did this, he stated, and then in the Spring of 1954, the job to which he was “temporarily” transferred was re-evaluated to Auditor (Industrial Costs) GS-9, which resulted in a reduction in salary of $430 per annum. He alleges that the original position of Price Analyst, GS-11 still remains.
It will be appreciated if you provide this office with full information regarding this case in order that we may properly analyze the situation.
By letter dated September 22,1954, the Civilian Personnel Officer of CHOD responded to the Begional Director’s request with the following comments:
In accordance with the request contained in your letter of 15 September 1954, we are forwarding the following information relative to the appeal of Mr. Oberkoetter.
Mr. Oberkoetter was employed by the Chicago Ordnance District on 18 August 1952 as Price Analyst, GS-11, Comptroller Division, Contract Pricing Branch. Due to the increased workload in the Budget and Fiscal Branch, Comptroller Division, he was assigned to that branch.
As a result of survey his position in Budget and Fiscal Branch was downgraded to Auditor (Industrial Costs), *653 GS-9. A letter of downgrade was issued to him on 18 February 1954 effecting his change to lower grade on 28 March 1954. A letter of decision was issued to him on 2 March 1954 upholding the grade established by our Salary and Wage Branch. The 7th U.S. Civil Service Region under date of 28 April 1954 concurred in the established grade of GS-9 for Mr. Oberkoetter’s position thereby further substantiating the allocation of our Salary and Wage Branch.
Due to the reduced workload Mr. Oberkoetter was notified 31 August 1954 of the abolishment of his position. He was offered a reasonable reassignment to the position of Voucher Examiner Supervisor, GS-7, Comptroller Division, Budget and Fiscal Branch. However, he declined acceptance of this reassignment on 9 September 1954.
Mr. Oberkoetter in declining reassignment indicated that he was currently being considered for a GS-12 position with another Governmental agency.
16. By letter dated September 30, 1954, the Regional Director of the Seventh Region acknowledged the receipt of the above information furnished by CHOD and made further inquiry as follows:
* * * * *
It is noted Mr. Oberkoetter is an Auditor (Industrial Costs) GS-9, has been reached for reduction in force action and has been offered a change to lower grade to the position of Voucher Examiner Supervisor, GS-7, which he does not consider a reasonable offer.
In order that a decision on this point may be made, it will be appreciated if you provide this office with a list of positions in your establishment in the competitive area, involved in grades GS-8 and 9 which are encumbered by employees with lower retention standing than subgroup IIB. The list should contain the names of incumbents of these positions, together with the grades of the positions, the retention subgroups and retention points of each.
On October 14, 1954, the Civilian Personnel Officer of CHOD responded to the Regional Director and furnished him the retention registers for positions in grade 8 and 9 which were encumbered by employees with lower retention standing than subgroup IIB.
*654 Thereupon, on October 21, 1954, the Eegional Director wrote plaintiff as follows:
Further reference is made to your letter of September 9, 1954, in which you appealed the reduction in force action of the Chicago Ordnance District in offei'ing you a reassignment to a grade 7 position because of the abol-ishment of your grade 9 position.
The Personnel Officer of your 'agency advises that the grade 7 position of Voucher Examining Supervisor, GS-7, was the 'best offer that could be made to you and that existing positions at grade 8 and grade 9, occupied by employees in a lower retention sub-group than yourself (IIB), were positions. Contract Negotiator, Supervisory Safety Inspector, GS-9, Supervisory Inspection Specialist, Storage Specialist (Packaging and Preservation) GS-9, Organization and Method Examiners,. GS-9, Inspection Specialist (Gages) GS-9, Property Disposal Officer, GS-9, Inspection Specialist GS-9, and Production Specialist, (General) GS-9.
If you feel that you are qualified to fill any of these positions, please submit a fully executed application form 57, outlining all of your experience, and stating, in letter form, the positions for which you feel you are qualified. For your convenience, we are enclosing a form 57. Please mark your letter and the form for the attention of Mr. C. F. Gruebner.
If we do not hear from you within seven (7) days from the receipt of this letter, it will be assumed that you do not consider yourself qualified for any of the above positions.
Plaintiff did not apply for any of the positions listed because he did not consider that he was qualified for them.
17. Meanwhile, plaintiff had received a Notification of Personnel Action (Standard Form 50), dated October 11, 1954, whereby he was reduced in force from the position of Auditor (Industrial Costs) GS-510-9, Job #1136, effective September 30, 1954. Other than his letter of appeal dated September 9, 1954. supra, plaintiff did not further appeal his reduction in force to either CITOD or the Civil Service Commission.[9] However, the Eegional Director’s *655 letter to plaintiff dated October 21, 1954, and quoted in the preceding finding, was tbe last communication to plaintiff by the Commission’s Seventh Regional Office regarding his reduction in force.
18. Plaintiff testified that, to the best of his knowledge, no employee in the Price Analysis Branch or the Budget and Fiscal Branch, other than himself, received a reduction in force notice during the summer and fall of 1954. Likewise, neither Mr. Dechmann nor Mr. Hamilton could recall any RIF during this period of time other than plaintiff’s separation.[10]
At the time of plaintiff’s reduction in force, Mr. Hamilton and Mr. Bach were assigned to and were working in the Industrial Cost Accounting Section of the Budget and Fiscal Branch. Mr. Hooper, although previously assigned back to the Price Analysis Branch, continued physically working in the Industrial Cost Accounting Section .at that time. See finding 9, supra. Both Mr. Hamilton and Mr. Hooper, as veterans of World War II, were entitled to veterans’ preference in accordance with section 12 of the Veterans’ Preference Act of 1944. 58 Stat. 390, 5 U.S.C. 861 (1958 Ed.) Therefore, neither one could have been separated by a reduction in force until after plaintiff had been separated. Mr. Allen A. Bach, a non-veteran like plaintiff, was also in the same grade, retention group, sub-group and competitive level as plaintiff. However, his service computation date was October 15, 1941, whereas plaintiff’s computation date was February 7,1942. Therefore, in any reduction in force, he also would have been separated after plaintiff.
19. Plaintiff’s claim is that if he had not been transferred from the Price Analysis Branch to the Budget and Fiscal Branch, and if he had not thereafter been downgraded from GS-11 to GS-9 (see findings 5, 6, and 9, supra), he would not have been separated under a reduction in force. The claim is that if he had remained in the Price Analysis Branch in *656 his prior position at the grade of GS-11, at least two of his fellow employees on that competitive level would have been reached for reduction in force prior to plaintiff. Those employees were James J. Flanagan and Jesse A. Kremer, both of whom were non-veterans and had later service computation dates than plaintiff.
20. As shown in finding 14, supra, the reason assigned by CHOD for plaintiff’s separation was “reduced workload in the Comptroller Division.” However, the head of plaintiff’s section, Mr. Hamilton, testified that his group’s workload “continued to be quite heavy.” In fact, it became necessary for him to ask for help after plaintiff had been separated. As a result, shortly after plaintiff’s separation, the chief of the Price Analysis Branch, Mr. Dechmann, requested that by reason of “increased workload,” Andrew K. Merri-man be detailed to Hamilton’s section for 60 days. On December 10, 1954, the Comptroller approved the request, and Merriman moved into Hamilton’s section where he performed approximately the same work plaintiff had been doing. Merriman’s title was “Auditor (Industrial Costs) Job #1290” and his grade was GS-510-11.
21. On November 17, 1954, plaintiff was given a temporary appointment (in lieu of reinstatement) to the position of Auditor, GS-510-11, in the Small Business Administration (SBA) in Chicago. By notices dated February 9, 1955, April 1,1955, July 1, 1955, September 29,1955, and October 7, 1955, plaintiff’s temporary appointment in SBA was extended. The last extension was not to exceed October 31, 1955, and on that date his temporary appointment with SBA was terminated.
22. The Board of Civil Service Examiners, by notice dated January 27, 1956, rated plaintiff eligible as Auditor GS-11 on Examination Announcement No. 7(B). On October 15, 1956, plaintiff was given a career reinstatement to the position of Auditor, GS-510-11 in the Internal Audit Division of the U. S. Navy Area Audit Office in New York City. On April 5,1957, he resigned from this position. His notification of resignation stated in pertinent part as follows:
*657 Please be advised that I hereby tender my resignation to accept other employment; said resignation to take effect at the close of business, Friday, 5 April 1957.
The “other employment” to which plaintiff referred was with the Federal Civil Defense Administration. However, by letter of April 15, 1957, the Placement Director of that Agency advised plaintiff that:
Due to proposed organizational changes we regret that we are unable to further consider your application for employment with this Agency. * * *
By letter of April 23, 1957, plaintiff protested this action and informed the Placement Director that he had resigned his position as a Navy auditor because he had been given to believe that upon security clearance he would receive an appointment to the Civil Defense Administration. By letter to plaintiff dated April 25, 1957, the Placement Director made the following response:
I regret that circumstances made it impossible to consider you further for a position with this Agency.
We are extremely sorry that you saw fit to resign the position you held with the Department of Navy while you were being considered for a position with the Federal Civil Defense Administration. You will remember that members of our staff advised you not to resign unless you received a definite offer of employment.
Since your letter mentions the possibility that you were disqualified for loyalty reasons, I can assure you that loyalty was not a consideration in making the determination.
23. After his resignation from the Navy on April 5,1957, plaintiff was unable to obtain further employment with the Federal Government. In fact, except for a short period of service with a private accounting firm in 1959, he was unemployed after April 5,1957. His efforts in the spring of 1956 to obtain employment with CHOD as an Auditor GS-11 were unsuccessful. During the same period of time and continuing through the spring of 1962, he also sought employment with various Governmental agencies (including CHOD) and private business concerns but without success.
*658 24. From Ms separation by DIF, plaintiff believed that his rights as a classified Civil Service employee were violated by CHOD. In June 1955 and in August 1957 he wrote letters of complaint to the Senate Post Office and Civil Service Committee in which he set forth his contentions and requested an investigation of what he claimed to be unfair employment practices. Also, in August 1957 he wrote to this court asking for information as to its procedures and inquiring whether he could present his claim personally. In response he received a copy of the court’s rules accompanied by a covering letter. On August 23, 1957, he wrote the General Accounting Office stating, in pertinent part:
I would appreciate receiving information as to the GAO’s policy in determining whether a government employee (Civil Service status) is entitled to redress under what he believed to be at the time, an unfair employment practice occurring approximately a year before the enactment of [the Salary Detention Law],
I would appreciate receiving information as to the policy and the procedure in suing for redress.
On October 10, 1957, an assistant general counsel of the GAO replied by letter in which he quoted pertinent provisions of the Salary Detention Law and then advised plaintiff as follows:
* * * * *
Under the above-quoted statute, it [if] you met the requirements you were entitled, effective the first pay period following June 18,1956, to the rate of basic compensation to which you were entitled immediately prior to the reclassification of your position. In the event you were entitled to but have not received the benefits of Public Law 594 the matter should be taken up with the personnel office of the agency in which you are employed.
The administration of Public Law 594 primarily is a function of the department or agency concerned. PIow-ever, section 25.411 of the Federal Employees Pay Degu-lations, Federal Personnel Manual, Zl-330.06 provides for appeal from agency action to the Civil Service Commission rather than to our Office. Since you say that you already have appealed to the Civil Service Commission but have received no ruling, we suggest that *659 you again bring your case to the attention of that agency.
Regarding your request for information as to suing for redress, your attention is directed to the provisions of 28 U.S.C. 1436; id. 1491, concerning matters cognizable in the district courts of the United States and in the United States Court of Claims.
In addition to his letter to GAO, plaintiff also wrote a letter, much to the same effect, to the Civil Service Commission Board of Appeals and Review. That letter was referred to the Seventh Civil Service Regional Office in Chicago. By letter dated October 21, 1957, the Regional Director advised plaintiff as to the general purport of the Salary Retention Law and suggested that he contact CHOD for a determination of his rights. Plaintiff followed that suggestion and conferred with the Director of Personnel at CHOD. By letters dated December 19,1957, and January 21, 1958, CHOD advised plaintiff that he was not covered by the Salary Retention Law.
Plaintiff stipulated in this lawsuit that no claim was made under Public Law 594, dated June 18, 1956, 70 Stat. 291, known as the Salary Retention Law.
25. In October 1958, plaintiff consulted his attorney in Chicago on a formal basis[11] to obtain advice as to whether he might have a legal claim and as to how best to proceed in connection therewith. He conferred with his attorney on eight occasions between October 1958 and October 1959 during which time the attorney was sporadically reviewing plaintiff’s records (which plaintiff furnished him on a rather piecemeal basis) to determine whether plaintiff had a cause of action for loss of pay. In the fall of 1959, plaintiff’s Chicago attorney told plaintiff that he “felt possibly * * * [plaintiff] had an action” and that it probably should be brought in the Court of Claims. This attorney testified that he was unfamiliar with this type of case[12] and that it took him until the fall of 1959 to determine whether plaintiff had a cause of action in the Court of Claims. In November 1959, plaintiff asked the American Federation of Government Employees *660 for advice on bis problems and was directed in December 1959 to several persons in Chicago with whom plaintiff conferred. Finally, in February 1960, plaintiff’s attorney in Chicago gave plaintiff a letter of introduction to a Washington attorney which resulted in plaintiff’s present representation. The petition was filed herein on March 25,1960.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.

 He died in December 1964 and the present plaintiff, his executor, was substituted.

 One of the Government’s defenses is that Mr. Oberhoetter failed to exhaust his administrative remedies within the Commission, but we do not consider that issue.

 The court has not closed its eyes to circumstances showing affirmatively that a long delay was justifiable or properly excusable. See, e.g., Mallow v. United States, 161 Ct. Cl. 207, 213 (1963) ; Baxter v. United States, 122 Ct. Cl. 632 (1952) ; Levy v. United States, 118 Ct. Cl. 106 (1950) ; Kaufman v. United States, 118 Ct. Cl. 91, 93 F. Supp. 1019 (1950).

 Baxter v. United States, supra, Levy v. United States, supra, and Elchibegoff v. United States, 106 Ct. Cl. 541 (1946), cert. dismissed, 329 U.S. 694 (1947), involved the pursuit of other judicial remedies before action was brought in this court. Kaufman v. United States, supra, involved the seeking of judicial relief by another employer in the same position as the plaintiff.

 We do not decide this point.

 Nov. 1955-Oct. 1956 (a year of unemployment) ; April 1957-Decembor 1964 (about 7% years of unemployment, ending with his death).

 In Chappelle v. United States, supra, 168 Ct. Cl. 362, the employee was suing for bach pay only for the period he was pursuing his administrative remedy and for 17 months thereafter. This was a much shorter time than is involved here.

The petition was filed by William F. Oberkoetter, the present plaintiff's decedent, and the case was tried while he was still alive. The references in these findings to “plaintiff” are to Mr. Oberkoetter. He died in December 1964 and the present plaintiff was thereafter substituted.

 In April 1955, the Industrial Cost Accounting Section on request of Mr. Dechmann was transferred back to the Price Analysis Branch. This occurred some six months after plaintiff had been separated from that section under the RIP.

 This is the identical job held by plaintiff from August 18,1952, to the date of his downgrade on March 28,1954, to Industrial Cost Accountant (#1136) GS-9.

 See footnote 2, supra.

 A job series is simply a grouping of occupational types, for example, the 500 series pertains to accounting jobs and the 1100 series to general business jobs.

 The record is not clear as to whether plaintiff was personally interviewed during this audit. His recollection was vague in this regard. Any records made during the job audit would have been destroyed in the normal course of business after a period of five years had elapsed. This would be in keeping with the records disposition schedules published by the Department of the Army.

 He aid not actually return to the Price Analysis Branch until some time after plaintiff was “riffed” in September 1954.

 In his original testimony herein, plaintiff firmly insisted that the handwritten draft was prepared for him by Mr. Donald L. Brain who was chief of the branch for which Mr. James worked. However, during the course of his testimony Mr. Brain was shown the draft and denied that it was in his handwriting. However, he thought it looked like the handwriting of Mr. James, and after further investigation counsel for the parties stipulated that Mr. James had written the draft. As for Mr. Brain, he testified at the trial that he could not recall plaintiff at all and that he had no specific recollection of ever having had any discussions with plaintiff.

 Plaintiff testified that when he reviewed the era.lua.tory report in the CHOD Personnel Office he was advised by Mr. Brain that “There was nothing more to be done.” Mr. Brain testified that he could not recall plaintiff at all but that in any event since he was fully aware of an employee’s right of further appeal, he simply would not have advised plaintiff that he had no further recourse. Plaintiff’s general confusion with respect to Mr. Brain’s part in this entire matter requires disregard of this paz-tieular portion of plaintiff’s testimony. See footnote 7, supra.

 The Civil 'Service Regulations in effect at that time provided for an appeal from an initial decision -within the Commission to the Commissioners! of the Civil Service Commission within seven days after receipt of such initial decision.

 However, this failure to recall is not conclusive as to the absence of other separations, under the records disposition schedule at CI-IOD during this period of time, RIE records were destroyed at the end of two years from the close of the fiscal year in which any RIF action occurred unless an employee appeal was then pending. Hence, complete RIF records were not available for the period involved.

 He had informally discussed tlie matter previous to that time commencing approximately in August 1957.

 Plaintiff was aware of Ms attorney’s unfamiliarity with Civil Service employee matters.