James F. O'CALLAHAN

v.

The **UNITED STATES.**

No. 399–69.

United States Court of Claims.

Dec. 10, 1971.

Victor Rabinowitz, New York City, attorney of record for plaintiff. Kristin Booth Glen and Rabinowitz, Boudin & Standard, New York City, of counsel.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

In this action under 28 U.S.C. § 1491, plaintiff seeks payment of military pay and allowances for the entire period from the date of his illegal discharge to the date of decision in this court. On October 11, 1956, while serving an enlistment due to expire on March 8, 1961, plaintiff was convicted by general court-martial of attempted rape, housebreaking, and assault with intent to rape, and sentenced to ten years confinement, dishonorable discharge, and forfeiture of all pay and allowances. On June 2, 1969, the Supreme Court, on writ of habeas corpus, reversed the conviction in O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), holding that the jurisdiction of military courts-martial could not constitutionally extend to the alleged criminal conduct which was not "service-connected," and was committed out of uniform, on leave, off the military base and in a district, Hawaii, where civil courts were open. It held that plaintiff was denied his right to trial in such a civilian tribunal with the attendant rights of an indictment by a grand jury and a trial by jury. This decision voided the conviction and sentence, including plaintiff's dishonorable discharge.

On October 6, 1969, plaintiff commenced this action, proceedings in which were stayed in order for plaintiff to seek a review by the Board For The Correction of Military Records (hereafter Board) to settle plaintiff's military status. The Under Secretary of the Army, under date of January 12, 1971, and pursuant to Board recommendation, has nullified plaintiff's dishonorable discharge; discharged him honorably as of March 8, 1961, the expiration date of his enlistment contract in force at the time of his purported conviction; and denied him any connection with the Army after March 8, 1961.

Plaintiff says the Under Secretary of the Army abused his discretion in backdating the discharge to the end of the enlistment, and urges that he had never been properly discharged from the service until the time of action of the Board. The Government insists that the Secretary acted wholly within his discretion and, in any event, any cause of action accrues more than six years before this action was filed. Thus, the Government argues, the six-year statute of limitations on actions in this court, 28 U.S.C. § 2501 (1970), precludes this claim.

In order to reach the statute of limitations issue we must dispose of the threshold question of the time of accrual of the cause of action which requires analysis of the decisions of the Board and the Secretary.

The plaintiff's position proceeds as follows: when the Board replaced his dishonorable discharge with an honorable one, it attempted to make the discharge retroactive to March 8, 1961. Plaintiff says it can do the first but not the second. Since he had never been properly discharged before the date of the correction, that date should be the effective date of his new discharge. Thus, plaintiff continues, he is entitled to all pay and allowances for the intervening time. This line of logic has been

argued before this court on many occasions and it has been consistently rejected, the court uniformly limiting recovery for unlawful discharge to the period between the date of the discharge and the date of the expiration of the enlistment contract had the prior defective discharge not occurred. *E g.*, Middleton v. United States, 170 Ct.Cl. 36 (1965); Sofranoff v. United States, 165 Ct.Cl. 470 (1964); Clackum v. United States, 161 Ct.Cl. 34 (1963); Smith v. United States, 155 Ct.Cl. 682 (1961); Murray v. United States, 154 Ct.Cl. 185 (1961). This disposition is based on sound, time-honored contract principles, namely that neither party to a contract is bound beyond that for which he has bargained. Cases cited by plaintiff support this view. In Garner v. United States, 161 Ct.Cl. 73 (1963), the enlistment in question was indefinite, having no expiration date; therefore the date of the second, proper honorable discharge was used as the benchmark for determining the amount of recovery due.

■ Officers' commissions are generally of indefinite duration. Shaw v. United States, 357 F.2d 949, 174 Ct.Cl. 899 (1966), indicates that an *officer* remains an officer indefinitely, despite invalid conviction and discharge. In Motto v. United States, 172 Ct.Cl. 192, 348 F.2d 523 (1965), and again in Hamlin v. United States, 183 Ct.Cl. 137, 391 F.2d 941 (1968), the claimants also held commissions of indefinite duration. We determined, for reasons that will appear, that the Board review was a mandatory step, without which plaintiffs had no cause of action and therefore that the date of the Board's decision was the date of accrual of the action since no other reasonable one was available. One judge in *Hamlin* would have predicated the result on different grounds, not here applicable. A distinguishing fact in *Motto* and *Hamlin*, we think, is the different status of persons in the Armed Forces, who have *indefinite* commissions.

The *Motto* and *Hamlin* plaintiffs were Army officers who had been civilly convicted for bribery. Later the Secretary of the Army dismissed them, because 18 U.S.C. § 202 automatically forfeits offices such as theirs in case of conviction for that kind of offense. Still later the District Court voided their convictions, but McMullen v. United States, 100 Ct. Cl. 323 (1943), cert. denied, 321 U.S. 790, 64 S.Ct. 786, 88 S.Ct. 1080 (1944), stood as authority that the forfeiture remained effective despite such voidance, and without administrative correction, it followed that a suit here would not lie. The Secretary corrected their records, giving honorable discharges, effective the dates of dismissal, but a majority of this court held that plaintiffs could simultaneously take advantage of the new discharge and repudiate the effective date the Secretary had selected. The cases turned on the unique legal situation presented and do not establish any general rule that corrective honorable discharges cannot be backdated when it is reasonable and not arbitrary or capricious to backdate.

Juhl v. United States, 181 Ct.Cl. 210, 383 F.2d 1009 (1967), rev'd. on other grounds, sub nom. United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), is the only case cited by plaintiff as authority for the proposition that enlisted men are entitled to recover back pay withheld, when illegally convicted, to the day of judgment. Plaintiff overlooks the finding of fact in that case that Juhl was still connected with the service at the time of judgment, though at a lower grade as a result of the alleged illegal conviction.

■ Plaintiff asks this court to find the actions of the Board and the Secretary in "backdating" his discharge to the date of enlistment expiration to be arbitrary, capricious and outside the discretion vested with their offices. The issue, most clearly stated, is whether the Secretary of any service arm is required to postulate a re-enlistment without exercise of discretion in individual cases. We think that he is not. The principles of efficient management, maintenance of morale, and the continued public trust in

our Armed Services require that more substantial discretion be left in the hands of those who manage and maintain the Armed Services. Assume for the moment that plaintiff's conviction had been voided prior to the end of his enlistment and that he were free at that time to apply for re-enlistment, and that he actually harbored the intent to do so. We may note that in *O'Callahan* the Supreme Court does not pretend to be correcting an unjust conviction. It starts right out by reciting that he committed the offenses charged. Would the Secretary have been compelled to accept plaintiff's enlistment, knowing what he had done? Again, we think not. *Cf.* Davis v. United States, Ct.Cl. (decided November 12, 1971).

Plaintiff urges that Diamond v. United States, 170 Ct.Cl. 166, 344 F.2d 703 (1965) stands for the proposition that "an enlisted man has a *right* to reenlist within six months of the expiration of a past enlistment." (Emphasis in original.) This is true, *under the conditions existing in Diamond.* Diamond's right to re-enlist was a statutory one (Act of July 14, 1939, ch. 267, 53 Stat. 1001) granted to enlisted men who had served as officers and who had made timely application under the terms of the statute. Plaintiff here meets neither of these criteria. The only other case cited by plaintiff in support of his right-to-reenlist contention is Smith v. United States, *supra*, where another statute (Act of August 10, 1946, Sec. 2, 60 Stat. 993) granted limited Reserve reenlistment rights to those servicemen who had served to within two years of retirement. Again, plaintiff does not fit the mantle tailored by the statute.

■■ The issue of when an action based on an alleged illegal discharge accrues is not new to this court. In Mathis v. United States, 183 Ct.Cl. 145, 391 F.2d 938 (1968), we held it accrued all at once on the date of discharge. *Cf.* Kirk v. United States, 164 Ct.Cl. 738 (1964), in which we assumed a continuing claim to the expiration of the enlistment in a case where it made no differ-

ence. In both cases we stated the usual rule to be that resort to the Correction Board was not mandatory and therefore did not defer or toll the statute of limitations. The fact that a Board administratively changed the date of the discharge does not alter the time of accrual of the action, or at least does not extend it beyond the new discharge date. Goldstein v. United States, 131 Ct.Cl. 228, 130 F.Supp. 330, cert. denied, 350 U.S. 888, 76 S.Ct. 143, 100 L.Ed. 782 (1955). We have repeatedly held, as in *Mathis, supra,* at 148 of 183 Ct.Cl. that it is a "recognized, oft-repeated principle that optional administrative remedies do not defer or toll the statute of limitations." To hold otherwise would serve to induce a potential claimant to sit on his right of action, while running the gantlet of permissive reviews through Boards of Review, Correction or Appeal, all the while running up pay and allowances, before finally seeking relief in the Court of Claims. *See,* Crowe v. United States, 452 Ct.Cl. 1034, decided today. This is not within the spirit or intention of statutes of limitation.

■ Plaintiff's claim that he was compelled to first gain his freedom before pursuing his claim in this court, though understandable, is not persuasive. Factually, it was admitted at oral argument that plaintiff was out of jail for a substantial time, was then reincarcerated for a parole violation, and petitioned for habeas corpus in 1966. However, there are numerous cases where prisoners confined in penal institutions at all pertinent times have prosecuted their claims in this court. *E. g.,* Webster v. United States, 179 Ct.Cl. 917 (1967); Smith v. United States, 168 Ct.Cl. 242 (1964). "Imprisonment is not a legal disability under 28 U.S.C. § 2501, which would extend plaintiff's time for filing suit." Grisham v. United States, 183 Ct.Cl. 657, 664, 392 F.2d 980, 984 (1968). Moreover, plaintiff's attempts to invalidate his illegal discharge and recover back pay were "in no sense dependent upon * * * first securing a reversal of the court-martial convictions,

\* \* \*." Jackson v. United States, 179 Ct.Cl. 29, 37, cert. denied, 389 U.S. 985, 88 S.Ct. 468, 19 L.Ed.2d 478 (1967). This court, over the last quarter century, has repeatedly asserted its power to review court-martial convictions when associated with a money claim, Shaw v. United States, *supra,* and cases cited at 904, fn. 4, of 174 Ct.Cl., 949 of 357 F.2d; Shapiro v. United States, 107 Ct.Cl. 650, 69 F.Supp. 205 (1947), whatever the extent of such power may now be. It does not appear from the record that plaintiff was in any way prevented from filing his claim for a money judgment in this court at least simultaneously with his writ of habeas corpus proceedings in another forum (or, preferably, before then, for it appears that a filing even at that time may have been too late). The relief he now seeks was available in this forum at the time of his conviction, as would appear from Mallow v. United States, 161 Ct.Cl. 446 (1963), in which we held that a person illegally convicted by a court-martial could recover the fines it assessed against him. We can find no jurisdiction for granting it now, sought some ten years later.

Plaintiff's counsel eloquently sounds a theme often heard in this court: that it is absurd to say that a person has forfeited a right of action before he ever had one, holding limitations to have run before some landmark decision, without which the action was not practically maintainable. In effect, he says, O'Callahan had no viable right to sue here until the Supreme Court gave him one in 1969, that the cause of action accrued then, and limitations started to run at no earlier date. Even on plaintiff's major premises, the date is debatable. The drive against expanded court-martial jurisdiction, in our highest court, may be said to have got well under way with United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8, in 1955, amply soon to give the evidently prescient O'Callahan a timely cue. Plaintiff believes, evidently, that the Supreme Court changed the Constitution all at once in 1969, a belief in which he is not alone, for it is in part shared by the dissenting justices in O'Callahan, among others. However, we doubt if plaintiff's argument to the Supreme Court was along the line of urging it to change the Constitution. There is nothing in the prevailing opinion, e. g., the express overruling of any prior decision, to show that change was consciously in the Court majority's program. Rather it seeks to show that the change has been in military practice, with a subtle expansion of court-martial jurisdiction over the years having been enacted by the Congress, reaching beyond the concepts of the founding fathers as to proper court-martial jurisdiction. Nor does Mr. Justice Harlan's vigorous dissent point to any prior decision as being overruled outright. Plaintiff's position, that a decision such as O'Callahan accrues a cause of action if it was not practically maintainable under prior law, perhaps may seem a corollary to the view that the retroactive effect of O'Callahan in invalidating previous court-martial sentences should be limited, but the considerations involved in adjudicating these issues are different and there is no reason why the answers should have to conform. The view plaintiff urges here does not have the support of authoritative precedents, as does (in other contexts) limiting the retroactive effect of decisions, and he asks this "inferior" tribunal (in the language of Article III) to be the first to skate upon what appears to be singularly thin ice. The venture requires one with a more robust view of its mission, and possessing more expansive powers. We believe that in our system innovation of such magnitude is a prerogative of the Supreme Court alone. Our statute of limitations, 28 U.S.C. § 2501, is jurisdictional and we cannot restructure it to satisfy our own ideas of what is right and just.

Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The petition is dismissed.