Gilbert M. CASON

v.

The UNITED STATES.

No. 161–70.

United States Court of Claims.

June 16, 1972.

Penrose Lucas Albright, Arlington, Va., attorney of record, for plaintiff. Mason, Mason & Albright, Arlington, Va., of counsel.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

Plaintiff, a former enlisted man in the Navy, a diver, was involuntarily separated from the service for unfitness with a General Discharge Under Honorable Conditions on May 20, 1964, during his fourth term of enlistment which would have expired on July 27, 1967. The grounds for dismissal were that he had allegedly made homosexual overtures to a fellow serviceman and that he had admitted to engaging in prior homosexual behavior. Plaintiff urges that his dismissal on these grounds was improper and the procedure under which he was separated was defective.

At the time of his dismissal, plaintiff had served in excess of 15½ years and had he been permitted to complete his enlistment he would have served 18 years and 5 months. Plaintiff's briefs point out that his separation precluded his reenlistment and subsequent qualification for transfer to the Fleet Reserve.

The investigation which culminated in plaintiff's separation grew out of an incident aboard a training vessel based in Washington, D .C. J. R. Soehner, a seaman just recently attached to the ship, complained of homosexual advances made to him by plaintiff. The investigation revealed that plaintiff had indeed made remarks which might be construed as propositional or possibly shipboard bantering of no real consequence. Apparently, Soehner took these "advances" as real. He complained to a

superior and when told to forget it, he enlisted the aid of Collins, a fellow serviceman. Together, they planted a microphone in planitiff's quarters and recorded on tape a conversation between plaintiff and Soehner. This tape was turned over to investigative authorities.

When confronted, plaintiff denied all, claiming that his remarks were merely facetious, intended to bait Soehner, whom plaintiff suspected of being a homosexual. Upon interrogation, plaintiff admitted to a few isolated homosexual encounters, dating prior to the present enlistment. These admissions he subsequently repudiated. Plaintiff was later interviewed and given a psychiatric evaluation by Lt. Cdr. Jones, who reported:

\* \* \* It is the impression of this examiner that there is no real evidence on the basis of this interview to indicate sexual deviancy. But in view of the signed statement dated 16 December 1963 he would be classified as a Class II, Homosexual and discharged in accordance with SECNAVINST 1620.1.

SECNAVINST 1620.1 provided in pertinent part:

\* \* \* \* \* \*

b. (1) *Class II* is defined as those cases wherein personnel, while in the naval service, have engaged in one or more homosexual acts or where evidence supports proposal or attempt to perform an act of homosexuality, and which do not fall in the category of class I above.

(2) *Disposition.* Disposition will be accomplished by administrative separation under conditions other than honorable, unless the individual resists separation from the service under such conditions, in which case he will be recommended for trial by court-martial. \* \* \*

\* \* \* \* \* \*

\* \* \* In the case of one who, while in the service, has allegedly made an indecent proposal or has attempted to commit a homosexual act,

expert medical opinion that he is not a "true homosexual" is of bearing where the words or actions constituting the alleged proposal or attempt are admitted, but the actor contends that he spoke or acted facetiously, with no real intent to engage in the homosexual act. Such an issue will normally be best left to resolution by a general court-martial. * * *

By letter dated February 19, 1964, plaintiff's counsel at the time, Jack S. May, Esq., referred to plaintiff's emphatic denial of any homosexual activity and stated:

* * * In the event you do not deem it appropriate to grant his request for trial, he desires to avail himself of any and all administrative remedies that may be open to him in this matter. However, you are respectfully requested to regard this as a demand for trial by Courts-Martial or dismissal of the charges, *for the purposes of pursuing his rights in Courts of competent jurisdiction in the event administrative proceedings should lead to his separation from the Service.* (Emphasis supplied.)

By reply letter dated March 4, 1964, Capt. H. F. Rommel, commanding officer of the base, denied plaintiff's demand for a court-martial as "not considered appropriate."

The commanding officer convened a Field Board of Officers to conduct a hearing. Such hearing is governed by 32 C.F.R. § 730.15 (1962), which provides in pertinent part:

* * * the recorder arranges for the attendance at the hearing of the respondent, all witnesses for the government, and military witnesses for the respondent. * * *

* * * * * *

* * * Attendance at the hearing of military personnel on active duty who are in the local area will be arranged for by the recorder. Testimony of active duty military personnel not in the immediate area, if needed, should be obtained and presented in the form of written statements.

* * * * * *

(iii) The respondent has the right to present evidence to examine all witnesses, and to hear all evidence against him. * * *

At the hearing, the Government called no witnesses, presenting instead sworn statements of Soehner, Collins and others, along with an unsigned, unauthenticated transcript of the previously mentioned tape recording. Plaintiff objected to this procedure, noting that it denied him the opportunity of cross-examining the affiants and testing their testimony. Plaintiff vigorously objected to the tape transcript, arguing that not only was it hearsay but also that it was inaccurate including, he alleged, some things that were not said and not including certain parts of the conversation. His objection with regard to the "witnesses" was based on the fact that at least Soehner, Collins and an Office of Naval Intelligence agent who had interrogated plaintiff and participated in the preparation of the evidence against him were military personnel on active duty in the local area. It was plaintiff's position at the hearing that the regulations governing the hearing, *supra,* at least impliedly required the Government to produce these "witnesses" to permit plaintiff to test their statements under familiar due process requirements. The Field Board noted the objections but did not attempt to comply with plaintiff's requests. On the Field Board's findings and recommendation, plaintiff was separated from the Navy effective May 20, 1964. Plaintiff sought review before the Navy Discharge Review Board which, on April 25, 1965, upheld the discharge. On recommendation of the Judge Advocate General and the Secretary of the Navy, the case was returned to the Discharge Review Board to ascertain whether the Board had followed the command of Harmon v. Brucker, 355 U. S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) that homosexual acts committed while petitioner was not in the service

may not be considered. The Board was further directed not to consider Government Exhibit No. 7, Collins' statement, apparently on the grounds that he had been in the area at the time of the hearing and should have been present in person. On reconsideration, the Discharge Review Board, in a report dated April 12, 1966, found that the character of the discharge was proper and that no change or modification should be made, specifically noting that it excluded from consideration the testimony and exhibits precluded by the Judge Advocate General and the Secretary of the Navy. Plaintiff filed suit in this Court on May 19, 1970.

Plaintiff contends that he has been denied due process of law. He says the defendant failed to comply with its own regulations in that the only evidence presented by the Navy consisted of uncorroborated written statements of his accusers who were not made available for cross-examination despite their presence in the local area. He also complains of the commanding officer's failure to grant plaintiff a trial by court-martial when existing instructions state that a case such as plaintiff's "will normally be best left to resolution by a general court-martial."

The Government argues that the commanding officer's decision with regard to trial by court-martial was within his discretionary power since the regulations relied upon by plaintiff do not affirmatively require a trial by court-martial and that he did not abuse such discretion. The Government urges further that the separation was procedurally sufficient since the Discharge Review Board expressly excluded the complained-of ex parte statements, and testimony regarding conduct outside the current enlistment, during its reconsideration of the discharge. Defendant's primary defense is that of laches, complaining that plaintiff waited until the last day of our six-year statute of limitations period before bringing this suit.

Since we agree with the Government's last contention, we do not pass on the others.

Unlike the statute of limitations which determines whether the court has jurisdiction to hear the merits of the case, laches is an equitable doctrine available and employed at times in actions at law, when affirmatively pleaded. Rule 37(b). It operates, by necessary implication, when the period of limitations has not run. Laches are a bar only in instances where the litigant against whom the doctrine operates, by failure to act promptly, has so prejudiced and dislocated his opponent that for the court to do otherwise would operate as an injustice to the party pleading the laches defense. Both elements, delay and prejudice, must be present. Cases in this court, of which the following citations are merely representative, have expressed the opinion that laches has its function in the adjudication of suits for pay on the ground that public policy demands diligence in the prosecution of erroneous dismissal and removal actions. Jackson v. United States, 179 Ct.Cl. 29, cert. denied, 389 U.S. 985, 88 S.Ct. 468, 19 L.Ed.2d 478 (1967); Gersten v. United States, 364 F.2d 850, 176 Ct.Cl. 633 (1966); Bovard v. United States, 160 Ct.Cl. 619, cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); Nicholas v. United States, 55 Ct.Cl. 188 (1920), aff'd 257 U.S. 71, 42 S.Ct. 7, 66 L.Ed. 133 (1921). And we have found lack of diligence and resulting prejudice to defendant in cases where the delay was as little as eleven months. See, Alpert v. United States, 161 Ct.Cl. 810 (1963), and cases cited at 821.

In Grisham v. United States, 392 F.2d 980, 983, 183 Ct.Cl. 657, 663, cert. denied, 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968), we made the observation:

In this case the passage of time almost equals the limitations period which plaintiff asserts is applicable.

As we said in *Gersten* \* \* \* [*supra*]:

> [T]he longer the delay the less need there is to show, or search for, specific prejudice, and the greater the shift to the plaintiff of the task of demonstrating lack of prejudice \* \* \*.

We believe this principle to be a fair one and applicable to this case. Here, plaintiff has offered no explanation for a delay one day short of six years nor has he sought to show that defendant has not been prejudiced. Plaintiff's claim accrued immediately upon his discharge. Mathis v. United States, 391 F.2d 938, 183 Ct.Cl. 145 (1968). And resort to a Discharge Review Board is a permissive remedy which does not toll the statute of limitations. Mathis v. United States, *supra*; Kirk v. United States, 164 Ct.Cl. 738 (1964). Nor should resort to permissive remedies operate to toll the running of time in the case of laches. Gersten v. United States, *supra*.

■ At oral argument, there was expressed some doubt whether the court had applied the doctrine of laches to military pay cases. While it is true that most of our decisions invoking laches are civilian cases, research shows that two military pay suits were dismissed on the basis of laches. In Chamberlain v. United States, 66 Ct.Cl. 317 (1928), cert. denied, 279 U.S. 845, 49 S. Ct. 342, 73 L.Ed. 990 (1929), interestingly, the period from dismissal to the filing of petition was exactly five years, 364 days, identical to this case. In *Chamberlain*, 66 Ct.Cl. pp. 318–319, the court said:

> \* \* \* Assuming \* \* \* that plaintiff's dismissal was wrongful, he was nevertheless required to be diligent in the assertion of his right to the office or the compensation attached thereto. \* \* \*

The second case, Plunkett v. United States, 58 Ct.Cl. 359 (1923), though not a dismissal case, also illustrates that laches is applicable to military pay cases. In *Plunkett*, plaintiff was seeking pay differential between that of temporary rear admiral, lower half of grade, and of permanent rear admiral, upper half of grade. After finding that he was not entitled to preferences over senior temporary rear admirals under the statute involved, the court noted that plaintiff's delay of three years in contesting his claim while another held the office he claimed amounted to laches and precluded recovery. Aided by these precedents and our own inability to suggest a reason for a difference, we reiterate that the doctrine of laches is for application to military pay cases to the same extent as for civilians.

Even if the lapse of plaintiff's enlistment reduces the back pay that would have to be awarded to 2½ years, the delay has prejudiced defendant in another way. Had plaintiff brought suit shortly after discharge, and shown procedural errors made by the Navy, the Navy might have been able to clear its records in a new proper proceeding. With the passage of six years, witnesses may have died, certainly have forgotten some facts of the case, have likely retired from the Service or otherwise become unavailable and documents may have been destroyed. If the passage of time preventing defendant from being able to present an effective defense is prejudicial as held in *Gersten*, *supra*, then the prevention by laches of supersession of the record complained of with a well-made record is also prejudicial. Now nobody will ever know whether plaintiff was innocent or guilty and his asserted purpose of clearing his name is frustrated, whatever happens.

In a case such as this, where the plaintiff in effect concedes the Government had substantial evidence but says it was mishandled procedurally, others have interests the court needs to consider, even though not parties nor represented by counsel. These are the officials whose procedures were allegedly defective. Their impartiality, competence, or devotion to law are impugned more or less, and they are subjected to some harassment that interrupts their performance of public duty. Some peace

and serenity they must surrender as a price of being in public employment, but at least they are entitled to this: that they should be allowed to defend and explain their acts when their recollection is fresh and relevant evidence has not disappeared, for their own reputations as well as to protect the public fisc.

For these reasons we do not think a long period of laches is avoided by performance of surgery upon the claim, reducing the back pay award to a shorter period than the plaintiff asserts. Actually, the amount to be awarded is usually long unknown, in our precedure, and disregarded, since, for example, the amount of credit for other earnings is not computed until after entitlement is established by judgment.

In Chappelle v. United States, 168 Ct. Cl. 362 (1964) we declined to apply the defense of laches because plaintiff's counsel informed the court that he sought back pay for only the period he pursued administrative relief, plus seventeen months. After that, he started his own business. Any basis for laches, other than loss to the fisc, either did not exist or was not noticed by the court. We are not inclined to apply the case as a precedent where, as here, the grounds for laches are not wholly fiscal. We note that Chappelle's earlier suit in the D. C. Courts was dismissed for laches after only 34 months of delay, Chappelle v. Sharp, 112 U.S.App.D.C. 182, 301 F. 2d 506 (1961), cert. denied, 370 U.S. 903, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962). In that case he was applying for a reinstatement order, and this we thought a distinguishing feature. He had been dismissed for inefficiency as a fire fighter. However, he was temporarily reinstated, and the issue was, besides laches, whether the re-employment effected met the requirements of the applicable directive.

For these reasons, plaintiff's motion for summary judgment must be denied and defendant's cross-motion for summary judgment granted. The petition is dismissed.

DAVIS, Judge (dissenting in part):

Agreeing with the court that the defense of laches can be raised in a military pay suits as well as civilian pay litigation, I would nevertheless apply here the rule of Chappelle v. United States, 168 Ct.Cl. 362 (1964), to hold that plaintiff is not barred by laches from recovery of active duty pay for the period from his discharge (May 20, 1964) to the end of his then enlistment term (July 27, 1967). That is the only period for which plaintiff could possibly recover. See O'Callahan v. United States, 451 F.2d 1390, 1391–1392, 196 Ct.Cl. 556 (Dec.1971). We cannot say that he would have been re-enlisted in 1967 and allowed to remain in the service until he had 20 years' service and qualified for transfer to the Fleet Reserve under 10 U.S.C. § 6330. He had no such right as a matter of law and the Navy could, and might well, have refused to continue him. See O'Callahan v. United States, supra, 451 F.2d at 1392–1393, 196 Ct.Cl. at 560–562 (Dec.1971); Davis v. United States, 196 Ct.Cl. 517 (Nov.1971), cert. denied, 405 U.S. 1046, 92 S.Ct. 1313, 31 L.Ed.2d 589, April 3, 1972.

On this view, I would apply *Chappelle* because the slightly more than three years delay (May 20, 1964—July 27, 1967) is not ordinarily enough to invoke laches under our current interpretation of that defense, and I see no real prejudice to the Government. In military cases there is rarely the problem of paying two individuals for performing one job, and there is no such suggestion here. Nor is there any possibility of restoration to the service. There is also no question of prejudice with respect to the disposition of the case in this court since it is before us on cross motions for summary judgment on the administrative record, and no trial will be held or evidence produced here. The possibility of fading memories or loss of evidence is therefore immaterial.

The majority think that plaintiff's delay may prevent the Navy from clearing its own records in a new and proper ad-

**790**

ministrative proceeding. This does not seem to me at all a "prejudice" of the type we should consider with respect to laches. Plaintiff sues on the administrative record actually made, and that record can never be destroyed or obliterated for it was on the basis of that record that plaintiff was discharged. That is the record the court must consider on these motions. If the Navy wished, for its own reasons of honor or otherwise, to "re-do" the proceedings against plaintiff, that would not and could not in the slightest affect his present claim which stands or falls on the record actually made. By the same token, the inability (or diminished ability) of the Navy to "re-do" the proceedings, for purpose having nothing to do with plaintiff's claim in this court, should not affect our evaluation of the defense of laches which is raised against that court claim. In considering when to bring suit, plaintiffs should not have to worry that, if they prevail here, the service may want to run through the proceedings over again for its own internal ends.[1]

Since the court does not consider the merits of the claim, I limit myself to the brief statement that, in my view, plaintiff was invalidly discharged and is entitled to recover active duty pay (less offsets) until July 1967. My grounds are: (1) he was entitled under the Navy directive to the court-martial he requested, and should not have been discharged administratively; and (2) in any event, the proceedings before the Field Board of Officers were fatally defective, violating the applicable regulation, in that available live witnesses against plaintiff were not produced and the unauthenticated transcript of the tape-recordings was used. *Cf.* Glidden v. United States, 185 Ct.Cl. 515 (1968); Fletcher v. United States, 392 F.2d 266, 269–272, 183 Ct.Cl. 1, 7–12 (1968).

KUNZIG, J., joins in the foregoing opinion dissenting in part.

1. I see no reason, moreover, why the Navy could not have begun to "re-do" the proceedings while the matter was proceeding through the administrative process.