**Norman A. FOSTER and Charles T. Heimerdinger, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 500–82C, 501–82C.

United States Claims Court.

Sept. 21, 1983.

John A. Everhard, Falls Church, Va., for plaintiffs; Neil B. Kabatchnick and John H. Gullett, Washington, D.C., amici curiae.

Louis R. Davis, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

OPINION

NETTESHEIM, Judge.

These consolidated cases are before the court on cross-motions for summary judgment. Briefs have been filed by two *amici curiae,* and the parties and *amici* have been heard.

FACTS

Both plaintiffs are former United States Air Force Reserve officers. Each chal-

lenges his release from active service as a result of two passovers for promotion to the rank of temporary major on the ground that the selection boards involved did not contain an "appropriate number" of reserve officers, as required by 10 U.S.C. § 266(a) (1970),[1] and implementing regulations. Foster was passed over in November 1971 ("the FY 1972 board") and August 1972 ("the FY 1973 board"); Heimerdinger, in August 1972 ("the FY 1973 board") and September 1973 ("the FY 1974 board"). Plaintiffs allege and defendant admits that the selection boards contained only a single reserve officer. Plfs' Pets., ¶ 8; Def's Answers, ¶ 8.[2] After having been passed over, Foster and Heimerdinger were released from active duty on May 8, 1973, and May 31, 1974, respectively, and reenlisted in the regular Air Force to complete 20 years of service.

On December 12, 1979, the United States Court of Claims issued its decision in *Stewart v. United States*, 222 Ct.Cl. 42, 611 F.2d 1356 (1979). The court held that the 1975 promotion board involved in that case had been illegally constituted, but declined to enter final judgment until the Air Force Board for Correction of Military Records (the "AFBCMR") had an opportunity to consider the issue. The AFBCMR, having "given the [*Stewart* decision] earnest consideration," "respectfully disagree[d]" with the court.[3] Plaintiffs in the cases at bar, through the same counsel, filed suit in the United States Court of Claims on September 30, 1982. Each plaintiff sought a judgment in an amount equal to the difference in the pay and allowances of a captain and an enlisted member from his date of discharge, correction of his military records by removal of each of the passovers, and reinstatement to active duty in the grade of captain, as well as consideration for selection to the temporary grade of major by a properly constituted selection board.

Neither plaintiff in this case pursued permissive administrative remedies in connection with his separation. In addition, neither plaintiff avers in his affidavit the date on which he became aware of any possible cause of action based on his separation.[4]

Defendant moved for summary judgment arguing that, although plaintiffs are exempt under section 205 of the Soldiers' and Sailors' Civil Relief Act of 1940, 54 Stat. 1181 (codified as amended at 50 U.S.C.App. § 525 (1976)) (the "Soldiers' Civil Relief Act"), from the six-year limitations bar of this court because of their reenlistments, plaintiffs' claims are barred by the doctrine of laches. Plaintiffs thereafter cross-moved for judgment in their favor on the merits. Although not conceding plaintiffs' entitlement, defendant's opposition asserted the laches bar as a complete defense to liability and did not argue the merits. Thus, absent a determination in its favor on the laches question, plaintiffs would be entitled to summary judgment. RUSCC 56(c).

## DISCUSSION

The court is not inhibited from rendering summary judgment by the existence of any

---

1. This statute was amended in 1981 to require "at least one member of the Reserves, with the exact number of Reserves determined by the Secretary ... in his discretion." Pub.L. 97–22, § 2(c), 95 Stat. 124 (1981).

2. Plaintiffs, however, submitted unchallenged exhibits that show: Of the 25 members of the 1972 board, four were reservists; two out of the 35 members of the 1973 board were reservists; and on the 1974 board, three out of 35 were reservists. Roughly 30 percent of the officers considered by the 1973 and 1974 boards were reservists. Plfs' Pets. ¶ 8. Defendant admits this 30 percent figure in Heimerdinger's case, but not in Foster's. Def's Answers, ¶ 8.

3. This language appears in one of the AFBCMR's post-*Stewart* denials of applications for correction of records, which was dated October 26, 1982.

4. Plaintiffs' brief in opposition to defendant's motion for summary judgment recites that "Heimerdinger took prompt action as soon as he became aware of his situation." Plfs' Opp. at 9. Contrary to RUSCC 56(e), no evidence has been proffered to support this assertion. Plaintiffs' counsel at argument stated that plaintiffs first questioned the composition of their selection boards six months before filing suit.

contested issue of material fact, and judgment can enter as a matter of law.

Laches allows its proponent to avoid the inequity inherent in enforcement of a stale claim. The United States Claims Court has inherited from the Court of Claims established precedent that, in the context of military pay cases, defendant must make showings to satisfy the two elements of laches—inexcusable delay in filing suit and resulting prejudice to defendant. *Deering v. United States,* 223 Ct.Cl. 342, 349, 620 F.2d 242, 245 (1980) (en banc) (citing *Brundage v. United States,* 205 Ct.Cl. 502, 509, 504 F.2d 1382, 1386 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975)).

Initially, plaintiffs challenge defendant's invocation of the laches defense as a claim for equitable relief, which, indisputably, this court lacks jurisdiction to hear. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see* the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133(a), 96 Stat. 39 (1982) (to be codified at 28 U.S.C. § 1491(a)(1)). The short answer to this novel approach is that laches is an affirmative defense, not a claim for equitable relief. *See Brundage v. United States,* 205 Ct.Cl. at 506 n. 1, 504 F.2d at 1384 n. 1. *See also* RUSCC 8(c); Rules of the United States Court of Claims 37(b). Plaintiffs also argue that this court should reject the Court of Claims' holding in *Deering,* 223 Ct.Cl. at 347–49, 620 F.2d at 244–45, which expressly overruled *Sidoran v. United States,* 213 Ct.Cl. 110, 550 F.2d 636 (1977), in holding that the Soldiers' Civil Relief Act does not exempt active duty military personnel from the defense of laches. This argument was advanced by an *amicus,* as well. The *Deering* decision, however, is binding precedent under General Order No. 1, 1 Cl.Ct. Rules XXI (1982); consequently, the wisdom of that ruling is not subject to inquiry by this court.

*Unreasonable Delay*

Plaintiffs' claims accrued on their respective dates of separation, *Willcox v.*

*United States,* 3 Cl.Ct. 83, 84–85 (citing cases) (1983) (WOOD, J.), *appeal noted* (Fed.Cir. Sept. 14, 1983), and thereafter, to avoid laches, they were required to pursue any claims based on their separation with diligence. *See Brundage,* 205 Ct.Cl. at 507, 503 F.2d at 1385. It is undisputed that neither plaintiff ever requested any information from the Air Force concerning the composition of the selection boards that passed on his promotion.

Both plaintiffs allege identically that they were prevented from earlier acting on their rights because "defendant intentionally did not reveal to the public the composition of the aforementioned selection boards until forced to do so through discovery in connection with recent litigation." Plfs' Pets. ¶ 12. The referenced discovery took place in 1977 in connection with the *Stewart* case.

*Willcox* and *Wyborski v. United States,* No. 624–82C (Cl.Ct. July 28, 1983) (WOOD, J.), *appeal noted* (Fed.Cir. Sept. 14, 1983), were cases also brought by Air Force reservists challenging their non-selection by the 1975 board, in *Willcox,* and by the 1973 and 1974 boards, in *Wyborski.* The plaintiffs mounted an unsuccessful argument to avoid the statute of limitations based on defendant's alleged fraudulent concealment of the " 'crucial and material fact' " of the component composition of the 1973, 1974, and 1975 boards. *Wyborski,* slip op. at 3; *Willcox,* at 85. Plaintiffs make the same charge in the cases at bar. Plfs' Opp. at 2. During argument, plaintiffs' counsel somewhat modified his theory as "an equitable duty not to misinform" plaintiffs about the number of reservists serving on the selection boards passing on their promotion opportunities. The court treats plaintiffs' arguments under this formulation because it would require a lesser showing to prevail against the laches defense.

In response to plaintiffs' charge of misinformation, defendant rejoins that the Air Force did not conceal the composition of the selection boards and that plaintiffs were not kept in ignorance of their claims. Af-

ter approval of the results of the boards involved in these cases, the Air Force distributed a fact sheet to each officer not selected for promotion. The fact sheet stated that the board was composed of colonel members and a general officer president. The fact sheet for the 1972 board shows that 25 officers in the grade of colonel served with a major general as president. According to the fact sheet for the 1973 board, 35 officers in the grade of colonel served with a major general again presiding. Both fact sheets recite: "Board procedures are unclassified and are freely discussed. The only items of privileged information are the names of board members and the individual scores of eligible officers." (The fact sheet for the 1974 board was not submitted. *But see supra* note 2.)[5] On November 12, 1975, the Air Force made public a statement that the Air Force temporary promotion boards had been constituted lawfully in accordance with 10 U.S.C. § 266(a), because each board had "at least one Reserve officer as a member."

Plaintiffs rejoin with the charge that the Air Force advised plaintiffs that the names of board members were privileged; that defendant obstructed the efforts of Air Force personnel to obtain knowledge of the component composition of their boards and to seek legal redress; that the Air Force misinformed plaintiffs by making no disclosures after the *Stewart* decision; and that the Air Force did not tell servicemen that their boards were improperly constituted after the Air Force knew as early as 1968 that its practices were unlawful under 10 U.S.C. § 266(a).

■ The court agrees with defendant that disclosure of names of board members is immaterial. The issue is whether defendant misinformed plaintiffs about the number of reservists, given the statutory man-

date that selection boards must include an "appropriate number" of reserve officers. The Air Force may have misinformed plaintiffs that the names of board members were privileged even after a policy had been adopted for release of names under the Freedom of Information Act, *see supra* note 5, but no such action occurred with respect to the component status of board members.

With respect to alleged obstruction of efforts to obtain information about the number of reservists and to seek legal redress, it is alleged that "Foster made inquiries but was rebuffed." Plfs' Opp. at 9. Foster's affidavit does not show that the Air Force interfered in any way with his opportunity to obtain information on board composition or to bring an action based on a violation of § 266(a). *See Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1260 (3d Cir.1974) (defendant's actions must constitute a substantial contribution to plaintiff's delay in bringing suit); *Conseglio v. Pennsylvania R.R.,* 211 F.Supp. 567, 575 (S.D.N.Y.1962) (Government charged with delay in bringing suit on behalf of plaintiffs who had done "whatever they could" to assert their rights). *Harrison v. United States,* 708 F.2d 1023 (5th Cir.1983), to which plaintiffs have directed the court's attention, does not support a conclusion that the Air Force deprived plaintiffs of knowledge about their causes of action. In *Harrison* the Air Force frustrated plaintiff's attempt to gain access to her medical records which disclosed the basis for a claim. In these cases the opportunity to obtain access to information—to acquire knowledge—was always present. That it was not acted upon was not the fault of the Air Force.

Based on more informative affidavits by plaintiffs in *Willcox* and *Wyborski* and on identical showings by defendant, Judge

---

**5.** The court gives no consideration to the fact that as of March 29, 1971, the Air Force adopted a firm policy of releasing the names of board members upon request under the Freedom of Information Act. The fact sheets, quoted above, state that the names were considered privileged. Defense counsel acknowledged the inconsistency between the fact sheets and secretarial policy and candidly advised that the

former were wrong. On March 13, 1975, the firm policy was adopted of releasing publicly the names of promotion board members after the results of the board had been approved. At any rate, defendant's reason for withholding the names of board members was not to conceal the composition of the boards, but to shield the members and the deliberative process.

Wood concluded that no evidence had been offered to prove that "the respective *numbers* of Regular and Reserve officers constituting the membership of the said selection boards" had been concealed. *Willcox,* 3 Cl.Ct. at 86 (emphasis in original); *see Wyborski,* slip op. at 4 (applying *Willcox*). Because few Reserve officers achieve the rank of colonel on active duty, Judge Wood concluded that the fact sheets disclosed that few reservists served on the boards. *Willcox,* 3 Cl.Ct. at 86 (citing *Stewart,* 222 Ct.Cl. at 48–50, 611 F.2d at 1359–60). This court is of the same view and, in addition, concludes that no evidence supports a finding that the defendant misinformed plaintiffs as to the number of reserve officers serving as board members.

Plaintiffs were not misinformed by the Air Force's failure to make disclosure of board composition after the *Stewart* decision. The *Stewart* decision imposed no duty of disclosure; absent inquiry, no such duty existed. There was no misinformation by breach of a duty to disclose. The Court of Claims has ruled that the Army's failure to inform reserve officers that selection boards lacked reserve representation or that a potential challenge to their nonselection existed does not constitute concealment. *See Gilmore v. United States,* 228 Ct.Cl. 829, 832 (1981).

As defendant urges, the court finds *Ide v. United States,* 25 Ct.Cl. 401 (1890), instructive. The Court of Claims dismissed Ide's claim because it was based on a statute, the law was on the books long before plaintiff sued, and a recent Supreme Court decision interpreting the law in another claimant's favor only "threw judicial light upon what had been the law for more than eighty years, as everybody was bound to know." 25 Ct.Cl. at 408. Plaintiffs were bound to know that the statute in these cases required representation of an "appropriate number" of reservists and were bound to take action to ascertain whether the representation was appropriate.

Finally, plaintiffs contend that a legal opinion in a February 7, 1968 memorandum put the Air Force on notice that the composition of its selection boards was unlawful.

The document states that " 'zero' " cannot be justified, although "[w]hat is an 'appropriate number' was left flexible . . . ." This is not a legal opinion that the Air Force actions here challenged were noncompliant with the statute.

Plaintiffs argue that the apparent lack of diligence in pursuing their claims is attributable to each having been assigned to three different posts since reenlistment. The fact of serving at different military posts of itself, however, does not render plaintiffs "unable to prosecute their claims due to the demands of military life." *Deering,* 223 Ct.Cl. at 348, 620 F.2d at 245. The court cannot assume that "[t]his uprooting of . . . [plaintiffs'] lives certainly interfered with their ability to pursue their remedies." Plfs' Opp. at 9.

Based on the foregoing, the court concludes that plaintiffs did not pursue their claims diligently and that the delay in filing these suits is not excused by any acts attributable to defendant.

■ The question remains whether the periods of delay in instituting suit—nine years in the case of Foster and eight years for Heimerdinger—constitute inexcusable delay. Plaintiffs have been relieved from the bar of statute of limitations, but not the separate defense of laches. *See Deering,* 223 Ct.Cl. at 347, 620 F.2d at 244 (quoting *Brundage,* 205 Ct.Cl. at 506, 504 F.2d at 1384). The six-year limitations statute nonetheless bears on the applicability of the doctrine of laches because,

> We view our statute of limitations not as an absolute entitlement to a grace period in which to sue but rather as an outside limit beyond which Congress has determined claims are simply too stale to be litigated fairly. Implicit in the statute of limitations period is a shorter period in which laches may apply . . . .

*Deering,* 223 Ct.Cl. at 348, 620 F.2d at 245. The en banc decision in *Deering* specifically acknowledged that a period of less than six years is applicable in the laches context to a serviceman protected by the Soldiers' Civil

Relief Act from the statute of limitations. *Id.* at 348–49, 620 F.2d at 245.

In both the cases at bar, delay in filing suit was in excess of six years from the date of accrual of the causes of action. The fact sheets disclosed the number of colonels on plaintiffs' respective selection boards. Even assuming, *arguendo,* that the duty of inquiry for purposes of laches could have arisen as late as 1975, when the Air Force publicly announced its view that each selection board contained an appropriate number of reservists because at least one reservist was included, both plaintiffs waited more than six years beyond that date in which to file suit. The periods of delay in these circumstances are inexcusable.

Plaintiffs ask the court to deny defendant resort to laches based on the refusal of the AFBCMR to apply the *Stewart* decision, conduct plaintiffs believe is inequitable and renders defendant's hands unclean. This view is material to the discussion of the excusability of delay, because the AFBCMR's response to the *Stewart* decision was neither prompt nor consistent with *Stewart.* As one *amicus* pointed out, because of the Air Force's recalcitrance in the face of the *Stewart* decision, defendant has been settling all *Stewart*-type suits in which suit was brought within six years of separation. The AFBCMR's refusal to apply the *Stewart* decision, however presumptuous, is not wrongdoing that will forfeit the defense of laches.

*Prejudice to Defendant*

Defendant contends that delay may give rise to "a 'reasonable presumption' of prejudice ... and the burden shifts to plaintiffs to show no prejudice ...." Def's Mot. at 9 (citations omitted).

The doctrine of laches in the military pay context originated in *Cason v. United States,* 198 Ct.Cl. 650, 461 F.2d 784 (1972) ("*Cason I*"), vacated, *Cason v. United States,* 200 Ct.Cl. 424, 471 F.2d 1225 (1973) ("*Cason II*"). The *Cason I* court, although stressing that both the elements of laches—unreasonable delay and prejudice to defendant—must be present to invoke the bar, introduced a qualification previously uti-

lized in civilian pay cases: " '[T]he longer the delay the less need there is to show, or search for, specific prejudice, and the greater the shift to the plaintiff of the task of demonstrating lack of prejudice....' " *Cason I,* 198 Ct.Cl. at 656, 461 F.2d at 788 (citing *Grisham v. United States,* 183 Ct.Cl. 657, 663, 392 F.2d 980, 983, *cert. denied,* 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968) [quoting *Gersten v. United States,* 176 Ct.Cl. 633, 636, 364 F.2d 850, 852 (1966) ] ).

On rehearing in *Cason II,* the Court of Claims somewhat modified its approach. The court had applied the quoted rule ("the *Gersten* rule") literally in *Cason I,* taking occasion from plaintiff's failure to show absence of prejudice to base a finding of laches on a speculative list of possible prejudicial factors. *Cason I,* 198 Ct.Cl. at 657–58, 461 F.2d at 788–89. In *Cason II,* however, the court appeared to shift the burden of a minimal showing of prejudice onto defendant: "We suggested certain areas of possible prejudice in our initial opinion in this case, but the defendant has made no attempt to substantiate that it was in fact in any specific manner prejudiced by plaintiff's delay." *Cason II,* 200 Ct.Cl. at 431, 471 F.2d at 1229. The *Gersten* rule thus became the weaker proposition that, "[w]ith a minimal showing of injury ... [plaintiff's four-year delay in filing suit] would have mandated application of laches ...." *Cason II,* 200 Ct.Cl. at 432, 471 F.2d at 1230. Judge Bennett's partial dissent indicates the confining effect of *Cason II* on the *Gersten* rule: "I am troubled ... by what appears to be a holding that where laches is invoked as a defense it must always be proved, never presumed ...." *Cason II,* 200 Ct.Cl. at 437, 471 F.2d at 1232.

Of the 23 military pay cases decided by the Court of Claims since *Cason II* in which laches have been found, only *Baker v. United States,* No. 356–81C (Ct.Cl. July 2, 1982), found facts tantamount to prejudice without any showing by the Government. *Baker* is totally out of the mainstream, however, because it neither mentions nor applies the two-prong test for laches, nor does it recite the *Gersten* rule or extensively rely

on any presumption of prejudice. The court merely stated that Baker's case "was already stale when his cause of action accrued...." on plaintiff's discharge in 1975 (he challenged adverse reports dating back to 1968), and, therefore, it was "incumbent on him to ... sue here promptly, if he were going to do so at all." *Baker,* slip op. at 4.

Defendant relies on *Devine v. United States,* 208 Ct.Cl. 998, 1001, 529 F.2d 532 (1975), and *Adkins v. United States,* No. 420–80C, slip op. at 5 (Ct.Cl. Sept. 29, 1981), to support its assertion that a plaintiff is required to show absence of prejudice. In *Devine* plaintiff's physical condition 26 years earlier was in issue. The court called *Devine* "one of those flagrant cases ... where the longer the delay the less need there is to search for specific prejudice and the greater the shift to plaintiff of the task of demonstrating lack of prejudice." 208 Ct.Cl. at 1000–01, 529 F.2d at 532–33. Nonetheless, the court noted that defendant had shown actual prejudice, *i.e.,* the impossibility of examining doctors who had originally examined plaintiff. *Adkins* is the source of defendant's assertion that "the burden of showing there was no prejudice shifts to plaintiff ...." where the delay in asserting the claim is too long. *Adkins,* slip op. at 5. Here, too, the court pointed to the actual prejudice to defendant of being required to pay salary for many years in which plaintiff rendered no service to defendant. In stating that "the cases are legion in this court ...." that if the burden shifts, plaintiff must show that the Government suffers no prejudice, *Adkins,* slip op. at 5, the Court of Claims cited to *Deering,* 223 Ct.Cl. at 350, 620 F.2d at 246. In fact, *Deering* merely stated the *Gersten* rule that "the longer the delay by a plaintiff in filing suit, the less need there is to search for specific prejudice and the greater the shift to plaintiff of demonstrating lack of prejudice." *Id.* (citations omitted).

■ Because no case decided by the Court of Claims relied on presumed prejudice absent a showing of actual prejudice, this court is reluctant to apply the presumption urged by defendant in such circumstances, *see Fleming v. United States,* 2 Cl.Ct. 111, 116 (1983) (NETTESHEIM, J.); *cf. Goodwyn v. United States,* 2 Cl.Ct. 600 (1983) (KOZINSKI, C.J.), and has ordered defendant to make a showing of actual prejudice.

Defendant bases its showing of actual prejudice on the significant sum for services neither required by the Air Force nor rendered by plaintiffs which the Government must pay if plaintiffs prevail. Defendant dramatized its assertion by illustrating that plaintiff Foster's claim for backpay reaches $100,000, taking into account the differential between a captain's pay and Foster's actual enlisted pay over the years in issue.[6] This amount is far from insignificant. Plaintiffs argue that defendant will reap an unexpected reward if plaintiffs are not allowed to recover, because the Air Force enjoyed the professional services of two officers for the pay of enlisted members. Plaintiffs' argument was rejected previously by the en banc court in *Deering,* 223 Ct.Cl. at 349–50, 620 F.2d at 246, in the context of payment for an extended period of officers' salary to individuals serving in the military at a lower rank. *But see Crispino v. United States,* 3 Cl.Ct. 306 at 311 (1983) (WHITE, S.J.). Defendant has made the requisite showing of prejudice in this case.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and plaintiffs' cross-motion is denied. Judgment will enter dismissing the petitions.

IT IS SO ORDERED.

Costs to the prevailing party.

6. Heimerdinger also was seeking a captain's pay.