**Allen J. TALLEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 147–83C.**

United States Claims Court.

Dec. 4, 1984.

Paul A. Kiefer, Washington, D.C., for plaintiff. John C. Morrison, Kiefer & Morrison, Washington, D.C., of counsel.

Helene M. Goldberg, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Capt. Marilyn Barton, U.S. Air Force, Washington, D.C., of counsel.

## ORDER

NETTESHEIM, Judge.

By order of September 28, 1984, amended on October 2, 1984, the court required defendant to file its response to plaintiff's oral motion pursuant to RUSCC 15(a) to amend his complaint by dropping his claim for back pay for the period commencing 30 days after the decision marking the end of his administrative remedies. Plaintiff thereby sought to defeat defendant's claim that it would be prejudiced if plaintiff's complaint were not barred by the doctrine of laches.

In opposing plaintiff's motion, defendant submitted calculations showing that, if the motion to amend were allowed, plaintiff would still seek $17,181.08 for back pay and allowances for the period commencing on June 30, 1977, when plaintiff was separated as a captain, until May 31, 1979, 30 days after he exhausted his administrative remedies. Plaintiff responds that because the period of time spent pursuing a permissive administrative remedy is excluded from a laches period, so should the damages incurred during this period be deducted from the damage exposure that defendant claims constitutes prejudice here. Plaintiff also questions whether the $17,181.08 figure reflects set-offs, consisting of his reenlistment and separation pay.

Regarding the treatment of set-offs, plaintiff was in a position to offer his own calculations, albeit approximations, and should have responded to defendant's calculations as provided by RUSCC 56(e), rather than chiding defendant for failing to take into account "the amount of credit for other earnings [that] is not computed until after entitlement is established by judgment." *Cason v. United States*, 198 Ct.Cl. 650, 658, 461 F.2d 784, 789 (1972) ("*Cason I*"), *vacated on other grounds*, 200 Ct.Cl. 424, 471 F.2d 1225 (1973) ("*Cason II*").

After plaintiff's correction board rejected his application, he waited three years and eleven months before filing suit without any extenuating circumstances or other explanation for the delay. Precedent binding on this court allowed the laches defense in a military pay case for a period of unexplained delay lasting three years and eight months. *Brundage v. United States*, 205 Ct.Cl. 502, 509, 504 F.2d 1382, 1386 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). Reducing the claim period to approximately two years still subjects defendant to a significant monetary judgment. The question is whether plain-

tiff should be allowed to amend his claim by reducing it and, if so, whether defendant nonetheless has shown actual prejudice to justify the laches bar.

In *Foster v. United States*, 3 Cl.Ct. 440, 446 (1983), *aff'd*, 733 F.2d 88 (Fed.Cir.1984), this court required defendant to make a showing of actual prejudice instead of asking the court to rely on a presumption of prejudice which, in fact, had only been sanctioned in those cases decided by the United States Court of Claims in which some type of actual prejudice had been shown. One of the difficulties with presuming prejudice and shifting to plaintiff the burden of negating its existence is that, beyond cavil, in every case of unreasonable delay involving witness testimony, memories that have not previously been committed to affidavit or transcript dim or fade, witnesses cannot tell their stories when their recollection is fresh, and so forth. The presumption becomes irrebuttable because such manifestations of prejudice cannot be rebutted. The Court of Claims, however, did not speak in terms of an irrebuttable presumption.

If the prejudice consists of the loss, disappearance, or destruction of documents, defendant in the first instance knows what it needs for its defense, but no longer has. A plaintiff can attempt to cure such a showing of prejudice by, for example, producing documents he has retained or by showing that he alerted the Government of his claim before documents were destroyed in the normal course. If the prejudice consists of the death or unavailability of witnesses, the administration of justice is not served by presuming prejudice at the outset, given a lengthy delay period, then requiring plaintiff, in order to rebut the presumption, to serve interrogatories on defendant requesting the names and addresses of all witnesses it would call in order to ascertain whether they are alive and available. How much more economical of time to have defendant advise plaintiff who is missing, so that plaintiff can attempt to show that a given person's absence is not prejudicial (*e.g.*, his testimony would be cumulative, he gave a previous affidavit, he

was deposed). Given that the Court of Claims pointed to actual prejudice in cases recognizing the presumption of prejudice, requiring an actual showing is not out of step with those precedents.

Of the two prongs of the laches defense—unreasonable delay and prejudice—unreasonable delay is the hallmark of laches, even though prejudice must also be shown:

> "The defense of laches stems from the principle that 'equity aids the vigilant, and not those who slumber on their rights,' and is designed to promote diligence and prevent enforcement of stale claims."

*Wilmot v. United States*, 205 Ct.Cl. 666, 685 (1974) (quoting *Powell v. Zuckert*, 366 F.2d 634, 636 (D.C.Cir.1966) (citation omitted)). In *Brundage*, 205 Ct.Cl. at 505–06, 504 F.2d at 1384, the court said:

> Laches is a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury or prejudice to the adverse party. The doctrine of laches is based upon considerations of public policy, which require, for the peace of society, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth....

*Steuer v. United States*, 207 Ct.Cl. 282, 294 (1975), is to the same effect:

> Laches is a doctrine grounded on considerations of public policy that for the peace of society demands diligence in the prosecution of erroneous dismissal and removal actions in order to avoid stale claims.

(Citations omitted); *see Jones v. United States*, 6 Cl.Ct. 531 (1984) (order granting defendant's motion for reconsideration).

Allowing this plaintiff to come into court and overcome a defense of laches that defendant has substantiated as to both unreasonable delay and monetary prejudice, by

removing the prejudice, would excuse plaintiff's lack of diligence. Plaintiff would take the position that the price he is prepared to pay is high—waiver of all damages from the date 30 days after the correction board rejected his claim.

*Chappelle v. United States*, 168 Ct.Cl. 362 (1964), appears to support plaintiff's position.[1] Although plaintiff's counsel in *Chappelle* informed the court only at oral argument that he claimed no more than for the period while he was pursuing his military administrative remedy and for 17 months thereafter—a longer period than plaintiff in this case would claim if his motion to amend were allowed—the Court of Claims declined to allow the laches defense. The court remarked, "[D]efendant is no more prejudiced by the institution of suit by plaintiff in 1963 than it would have been had he sued immediately after the period for which he now asks to be paid...." 168 Ct.Cl. at 366. Here plaintiff also attempts to structure his damages as though he filed suit 30 days after the decision on his administrative remedy.

The Court of Claims in *Cason I*, however, distinguished *Chappelle* from a case similar to the one at bar on the ground that defendant's liability in *Chappelle* was limited by operation of law to the period before plaintiff took a higher-paying civilian job and not by plaintiff's action in volunteering to limit his damages to a certain period. *Chappelle* did not present the danger inherent in potentially open-ended claims like the one at bar, as described by the Court of Claims in *Chappelle*:

> The effect of a judgment recovered by an employee discharged illegally is to give him the pay of the position and also to the one appointed to succeed him. It also has the incidental effect of requiring the Government, either to restore him to his old position and to discharge the person appointed in his stead, or to subject itself to successive suits for pay by the discharged employee, so long as he is deprived of the position from which he has been illegally discharged....

Explaining that in *Chappelle*, "[a]ny basis for laches, other than loss to the fisc, either did not exist or was not noticed by the court...," 198 Ct.Cl. at 658, 461 F.2d at 789, the court in *Cason I* also pointed to the important policy of permitting public officials to defend their actions

> when their recollection is fresh and relevant evidence has not disappeared, for their own reputations as well as to protect the public fisc.

> For these reasons we do not think a long period of laches is avoided by performance of surgery upon the claim, reducing the back pay award to a shorter period than the plaintiff asserts. Actually the amount to be awarded is usually long unknown, in our precedure [sic], and disregarded, since, for example, the amount of credit for other earnings is not computed until after entitlement is established by judgment.

*Id.* (quoted in part with approval in *Brundage*, 205 Ct.Cl. at 511, 504 F.2d at 1387); *see Jones v. United States*, 6 Cl.Ct. at 534. Because *Cason I*'s decision as to laches was vacated in *Cason II*, the former is not binding on this court.

In *Deering v. United States*, 223 Ct.Cl. 342, 349, 620 F.2d 242, 246 (1980) (en banc), the Court of Claims ruled that prejudice can be bottomed on the payment "for an extended period [of] a salary for services the Government did not require." The *Deering* court did not exclude damages for the period of time within which an individual pursues permissive administrative remedies. This is not surprising because Deering did not apply to a correction board. Whether the *Deering* court envisioned the situation now before the court in formulating its rule is subject to surmise in which the court will not engage.

 It is not inconsistent, however, to decline to penalize a complainant for resorting to a permissive administrative remedy

---

**1.** *Chappelle* involved an unreasonable delay of 39 months; the period in the case at bar is 47 months.

by not including the period of delay for purposes of laches, *Cason II,* 200 Ct.Cl. at 432, 471 F.2d at 1230, but to include the damages incurred during the period for purposes of assessing prejudice to defendant. Damages begin to accrue when a cause of action accrues—at discharge or separation. *See Mathis v. United States,* 183 Ct.Cl. 145, 391 F.2d 938 (1968) (per curiam); *Kirk v. United States,* 164 Ct.Cl. 738 (1964) (per curiam).

A plaintiff can resort to his correction board, although a delay thereafter in suing, such as the three years and eight months involved in *Brundage,* guarantees defendant's ability to mount a successful laches defense, because damages will have accrued since the date of discharge, unless surgery is allowed. If a plaintiff comes into court reasonably promptly after his board action concludes, the accrual of damages since his separation does not precipitate the laches defense, because no unreasonable delay is manifest. Were it otherwise, a plaintiff who is diligent would stand on no different footing than the nondiligent; if surgery is not permitted, the latter cannot avoid prejudice and, hence, the laches bar given an excessive delay. Similarly, if documents disappear or a defense witness dies while plaintiff is before a correction board, defendant is not prevented from arguing that prejudice, subject to plaintiff's curing any such showing.

 The court concludes that plaintiff should not be allowed to perform surgery on his claim to remove the monetary prejudice to defendant. The process of reducing a money claim to avoid prejudice is not manageable judicially, whereas rebutting a showing of prejudice based on missing documents or witnesses is. A plaintiff can rebut a showing of actual prejudice with respect to documents or witnesses, but not monetary prejudice. Because the military pay cases will be few in which monetary prejudice, exclusive of set-offs, cannot be shown, the result is harsh, albeit in harmo-

ny with what the court regards as the sound policy articulated by the Court of Claims in *Cason I.*

## CONCLUSION

Based on the foregoing, the laches defense will be allowed.[2]

Plaintiff's motions to amend and for summary judgment are denied. Defendant's cross-motion for summary judgment is granted. The Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.

No costs.

2. The October 28, 1984 order resolved against plaintiff one of his statutory arguments. In view of the decision on laches, it is not neces-

sary to pass on plaintiff's second statutory argument, which was the subject of both plaintiff's and defendant's supplemental memoranda.